BRADLEY, Judge.
This case involves the application of Part 2 of the Federal Trade Act of 1974 (Adjustment Assistance for Workers), 19 U.S.C. § 2271 et seq. (1976).
Appellant, the State Department of Industrial Relations (Department), appeals from the Shelby County Circuit Court’s judgment finding that appellee, Peggy Carter, was entitled to extended trade readjustment allowance (TRA) benefits under sections 2293(a)(1) and 2296(c) of the Federal Trade Act.
Peggy Carter was employed by Siluria Textiles. Siluria Textiles discontinued operations due to foreign competition in 1979 and Carter subsequently lost her job. She then signed up for fifty-two weeks of basic TRA benefits under the adjustment assistance allowance provisions of the Federal Trade Act. 19 U.S.C. § 2271 (1976). She began receiving basic benefits in 1979. After Carter exhausted the fifty-two weeks of basic TRA benefits, the Department notified her that she might be entitled to extended TRA benefits (also referred to as training allowances) for a twenty-six week *770 period if she enrolled in an approved training program. Carter enrolled in an LPN training program at Bessemer State Technical College in March 1979. This program was approved by the Department. Carter discontinued her training in July 1979. The Department then disqualified Carter from receiving further extended TRA benefits for the remaining weeks in the twenty-six week period because she dropped out of an approved training program. Carter appealed her disqualification to a departmental appeals referee, who upheld the disqualification. Carter appealed the referee’s decision to the Department of Industrial Relations’ Board of Appeals. The Board affirmed the referee's decision. Carter appealed to the circuit court, which reversed the Board, finding that Carter had good cause to discontinue the approved LPN training program and that she was, therefore, entitled to receive the extended TRA benefits. The circuit court entered judgment in favor of Carter for a sum equal to the balance of the number of weeks remaining to be paid under the twenty-six week period. The Department appeals to this court.
Before we address the parties’ contentions on appeal, we believe that a brief discussion of certain provisions of the Federal Trade Act of 1974 would be helpful in understanding the issues involved.
The purpose of the Federal Trade Act of 1974 is “to foster the economic growth of and full employment in the United States and to strengthen economic relations between the United States and foreign countries.” 19 U.S.C. § 2102 (1976). The act is further intended to assist industries, workers, and communities to adjust to changes in international trade. Part 2 of the Trade Act of 1974 (Adjustment Assistance for Workers) 19 U.S.C. § 2271 (1976), is intended to assist workers unemployed as a result of foreign competition to adjust to changing economic circumstances, to obtain new employment, and receive training and job search allowances. The Trade Act provides for trade readjustment allowance (TRA) benefits to be paid to workers who lost their jobs as a result of import competition. The act provides that an adversely affected worker may receive seventy percent of his average weekly wage for each week that he is unemployed, up to fifty-two weeks. An adversely affected worker who has exhausted his basic fifty-two week TRA benefits may receive TRA benefits for an additional period not to exceed twenty-six weeks in the following two cases: (1) to assist the adversely affected worker to complete approved training, or (2) to an adversely affected worker who had reached his sixtieth birthday on or before the date of his total or partial separation from employment. 19 U.S.C. § 2298. In no case may an adversely affected worker receive TRA benefits for more than seventy-eight weeks.
As stated earlier, Carter received fifty-two weeks of TRA benefits. After the fifty-two week period ended, Carter enrolled in a training program which entitled her to receive additional TRA benefits for up to twenty-six weeks. Carter completed approximately four months of the LPN program and then dropped out. The Department disqualified her from receiving extended TRA benefits, contending that these benefits were meant to be paid only for those weeks in which an individual was actually engaged in training. Carter contends, however, that she was entitled to receive payments for the remaining unpaid weeks in the twenty-six week period regardless of whether she was enrolled in a training program or not, because she dropped out of the program with good cause. She cites 19 U.S.C. § 2296(c) as authority for her position. This section reads as follows:
“(c) Any adversely affected worker who, without good cause, refuses to accept or continue, or fails to make satisfactory progress in, suitable training to which he has been referred by the Secretary shall not thereafter be entitled to payments under this part until he enters or resumes the training to which he has been so referred.”
*771 The circuit court apparently interpreted section 2296(c) to mean that an adversely affected worker who ceases training with good cause would still be eligible for extended TRA benefits. The Department disagrees with this interpretation, positing that even if Carter did have good cause for discontinuing her training she would not be eligible for extended TRA benefits or training allowance because she did not reenter some type of training program. The Department cites several sections of the Code of Federal Regulations, promulgated by the Secretary of Labor, to support its position. These regulations define a training allowance as a weekly cash allowance payable to a trainee, and define a trainee as an individual undergoing instruction. 29 C.F.R. § 91.3(32)(31) (1985). The Department contends that Carter may not be paid a training allowance because she is no longer a trainee as defined above.
Although the Department’s argument is persuasive, it fails to address the central issue in this case — What was Congress’s intention in drafting section 2296(c)? Our courts “can only learn what [the] Legislature intended by what it has said, and have no right to stray into mazes of conjecture or search for an imaginary purpose, in construing [a] statute.” Alabama Industrial Bank v. State, 286 Ala. 59, 237 So.2d 108 (1970). Congress clearly intended to make a distinction between workers who ceased training without good cause and workers who ceased training with good cause. We cannot presume that Congress made this distinction for no reason or purpose. Adams v. Mathis, 350 So.2d 381 (Ala.1977). The Department suggested that the purpose of this distinction was to permit an adversely affected worker who ceased training with good cause to thereafter continue to receive any remaining basic TRA benefits payable under the fifty-two week period, and that section 2296(c) did not apply to additional payments under the twenty-six week period. However, there is nothing in this section to support the Department’s argument. Cases discussing the Federal Trade Act of 1974 state clearly that the language contained in section 2296(c) is meant to apply to the extended twenty-six week period TRA benefits. See, International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America v. Donovan, 746 F.2d 855 (D.C.Cir.1984) (an adversely affected worker who refuses to continue in approved training program without good cause is thereafter ineligible for supplemental twenty-six week TRA benefits); Panczak v. Com., Unemployment Compensation Board, 48 Pa. Commw. 279, 409 A.2d 929 (1980). We conclude, therefore, that a worker who withdraws from a training program with good cause continues to be eligible for extended TRA benefits. Having so concluded, we now must decide whether Carter dropped out of the training program with good cause.
In the Code of Federal Regulations, good cause under the Federal Trade Act of 1974 is defined as “such reasons as would justify an individual’s conduct when measured by conduct expected of a reasonable individual in like circumstances, including but not limited to reasons beyond the individual’s control and reasons related to the individual’s capability to make satisfactory progress in or continue training.” 29 C.F.R. § 91.3(17) (1985).
Our courts have generally defined good cause as “a reasonable cause, one that is material and substantial as applied to a particular set of facts.” Department of Industrial Relations v. Mann, 35 Ala.App. 505, 50 So.2d 780 (1950).
The undisputed facts in the case before us are as follows.
Carter stated at the Board hearing that she had originally asked to be enrolled in cosmetology training or welding but eventually enrolled in the LPN program at the insistence of administrators handling the training program. Carter attended LPN classes for one quarter and completed two weeks in the second quarter. The first quarter involved mostly academic work. At the beginning of the second quarter the students began treating patients. Carter *772 then began experiencing problems in her training. She stated that she could not be around sick people without becoming very nervous and upset. She was unable to give shots to people or take a patient’s blood pressure, and was afraid that she would hurt patients because of her nerves and inability to work with sick people. Carter then asked that she be transferred to another training program but was refused. Carter dropped out of the program in July 1979, after two weeks in the clinical aspects of the training.
Although we have no cases dealing with good cause to cease training under the Federal Trade Act of 1974, we can analogize to cases dealing with good cause to cease employment under the Alabama Unemployment Compensation Law. In these cases the primary consideration is whether the employee acted reasonably in leaving his employment.
In Vulcan Materials Co. v. Holst, 418 So.2d 152 (Ala.Civ.App.1982), we held that uncontradicted evidence that employee’s increased job duties made her nervous, mentally and physically ill, was sufficient to support the trial court’s finding that employee voluntarily left her employment with good cause. We held similarly in Ventress v. Batey, 338 So.2d 584 (Ala.Civ. App.1976), concluding that an employee, who claimed that she voluntarily quit her employment because her job was tedious and made her nervous and ill, quit her employment with good cause.
In the case before us, Carter appealed the decision of the Board of Appeals to the circuit court, pursuant to section 25-4-95, Code 1975. An appeal from the Board of Appeals to the circuit court is for a trial de novo. Davis v. Department of Industrial Relations, 465 So.2d 1140 (Ala.Civ. App.1984); § 25-4-95, Code 1975. In a de novo proceeding the circuit court, rather than affirming or reversing the Board, renders a new, distinct, and independent judgment as may be required by the merits of the case. State Department of Industrial Relations v. Page, 362 So.2d 263 (Ala.Civ. App.1978).
This case was submitted to the circuit court upon stipulations of the parties, together with the record of the administrative proceedings and hearings, and briefs of counsel. The facts are undisputed and, therefore, no presumption of correctness applies to the circuit court’s findings. Department of Industrial Relations v. Wall, 34 Ala.App. 530, 41 So.2d 611 (1949).
There was uncontradicted evidence that the clinical aspects of the LPN program made Carter nervous and ill. She was emotionally unable to perform many of the tasks required in the LPN program. The Board of Appeals concluded that it would have served no useful purpose for Carter to continue in the program. Given the above facts and cited cases, we cannot say as a matter of law that the circuit court erred in concluding that Carter acted reasonably and, therefore, with good cause in dropping out of the program. Accordingly, we affirm the trial court’s order finding that Carter withdrew from the training program with good cause and therefore continued to be eligible for TRA benefits.
AFFIRMED.
WRIGHT, P.J., concurs.
HOLMES, J., concurs in the result.