287 S.W.3d 435 (2009)
In the Interest of S.M.V. and A.R.V.,[1] Minor Children.
No. 05-07-01733-CV.
Court of Appeals of Texas, Dallas.
June 10, 2009.
*438 Judith A. Grantham, Carrollton, TX, for Appellant.
Graciela Olvera, Antonio Olvera, Jr. & Associates, Dallas, TX, for Appellee.
Before Justices FITZGERALD, LANG, and SMITH.[2]

OPINION
Opinion by Justice LANG.
Following a jury trial on limited issues, appellant Fidel Valdez ("Valdez") appeals the trial court's order adjudicating parentage in a suit affecting the parent-child relationship. In three issues, Valdez contends the trial court erred when it (1) ordered the name of minor child S.M. Valdez to be changed to S.M. Vo; (2) allowed appellee Crystal Valdez ("Mother") to proceed with her case in chief and put on evidence with no pleading on file in this case; (3) "took it upon itself to order the clerk to file a pleading from another cause on behalf of [Mother] and the pleading ordered to be filed on behalf of [Mother] was a superceded pleading"; and (4) refused to grant a new trial on newly discovered evidence that appellee Alexander Vo ("Vo") is now incarcerated on drug charges pending at the time of trial.[3] We decide against Valdez on his three issues. The trial court's order is affirmed.

*439 I. FACTUAL AND PROCEDURAL BACKGROUND
Valdez and Mother were married on June 17, 2003, and Valdez filed for divorce from Mother on April 8, 2005. The divorce proceeding was assigned trial court cause number 05-06363-V. In the divorce proceeding, Mother alleged Valdez was not the biological father of S.M.V., whom Mother had given birth to on October 22, 2002. Vo filed a petition in intervention in the divorce proceeding alleging S.M.V. was his biological child.
In an August 24, 2006 "Order Severing Suit Affecting the Parent-Child Relationship," the trial court found S.M.V. was not the biological child of Valdez and was the biological child of Vo. In addition, the trial court's order provided in relevant part
"IT IS THEREFORE ORDERED that the suit affecting the children, [S.M.V. and A.R.V.[4]], is severed from this suit and shall be filed and assigned a new cause number in [this court]."
...
IT IS FURTHER ORDERED that the style of the new cause in suit affecting the minor children, [S.M.V. and A.R.V.], shall be identified as "IN THE INTEREST OF [S.M.V. and A.R.V.], MINOR CHILDREN."
IT IS FURTHER ORDERED that all the parties to this cause, Fidel Valdez, Crystal Valdez and Alexander Vo waive the necessity of issuance and service of process in the severed cause and shall promptly enter his or her appearance therein.
(emphasis original).
On November 10, 2006, Vo filed an "Original Counterpetition in Suit Affecting the Parent-Child Relationship" in this case, the severed suit (the "SAPCR"). Vo's pleading bore the trial court cause number assigned to this case, 06-16497-V. Vo requested, in part, orders for conservatorship, visitation, and support of S.M.V. Valdez filed an "Original Counter-Petition in Suit Affecting Parent-Child Relationship" in this case on November 29, 2006. In that counter-petition, which bore cause number 06-16497-V, Valdez requested, inter alia, that he be appointed sole managing conservator of S.M.V. and that Mother and Vo be appointed possessory conservators and ordered to make payments for the support of S.M.V.
The divorce proceeding and the SAPCR were tried concurrently before a jury in May 2007.[5] Prior to the calling of witnesses or presentation of testimony, and outside the presence of the jury, counsel for Valdez requested the trial court "strike out all of [Mother's] pleadings" regarding S.M.V. in Mother's third amended counter-petition, her live pleading in the divorce proceeding, because such pleadings were filed in the wrong cause. In addition, counsel for Valdez objected to any relief for Mother regarding S.M.V. on the basis that Mother had not filed any pleadings in the SAPCR. Counsel for Valdez argued Mother's "only live pleadings are in a Cause Number that does not deal with *440 [S.M.V.]." The trial judge overruled the objection of Valdez's counsel. Further, the trial judge stated she was "not inclined to strike pleadings and have this trial happen by ambush and be won on a technicality because the wrong Cause Number is at the top of the pleadings."
After receiving the jury's verdict on limited issues, the trial court made a July 30, 2007 rendition. On September 10, 2007, Mother filed a motion requesting the trial court sign a proposed order adjudicating parentage. In addition, on that same date, Mother filed a "Motion to Modify, Correct, or Reform Judgment," in which she asserted in pertinent part
The court rendered orders finding that [Vo] is the biological father of the two minor children subject of this suit. It was improper for the Court to enter orders without providing for a name change for the child [S.M.] Valdez. Respondent requests that the court correct and/or reform is [sic] judgment and grant a name change for the child to [S.M.] Vo.
Valdez filed objections to the proposed order adjudicating parentage on September 20, 2007, including an objection to the provisions changing the name of S.M.V. On that same date, a hearing was held and the trial court reformed the judgment and granted the name change regarding S.M.V. A September 20, 2007 order adjudicating parentage was signed by the trial court. That order, in relevant part, (1) appointed Mother, Valdez, and Vo joint managing conservators of S.M.V. and (2) provided "the child formerly known as [S.M.] Valdez shall hereafter be named [S.M.] Vo."
A timely request for findings of fact and conclusions of law was filed by Valdez on October 9, 2007. On October 18, 2007, Valdez filed a timely motion for new trial. Valdez asserted in relevant part in his motion for new trial that subsequent to the trial, Vo pleaded guilty to a first degree felony charge involving the possession of methamphetamine and was sentenced to five years' confinement. According to Valdez, such evidence constituted "newly discovered evidence" that, if available at the time of trial, "would have likely resulted in a different verdict on the issue of conservatorship, primary residence and name change" relating to S.M.V. Further, Valdez asserted the trial court erred in changing the name of S.M.V. because (1) there are no pleadings on file to change the name of S.M.V. and (2) no evidence was submitted before the jury or the court to support the request for such a name change. In addition, Valdez contended the trial court erred in admitting evidence by Mother over his objection when Mother had no pleadings on file to support the evidence submitted.
Valdez filed a notice of past due findings of fact and conclusions of law on November 8, 2007. On November 19, 2007, the trial court made findings of fact and conclusions of law that included the following findings of fact:
6. It is in the best interest of the child [S.M.] Valdez that her name be changed to [S.M.] Vo.
....
10. That [Valdez's] request that a default judgment be granted against [Mother] and [Vo] for their failure to file pleadings with the above cause number should be denied because this paternity case was severed from cause number DF05-06363-V, both [Mother] and [Vo] have pleadings in that companion divorce case, this paternity case is being tried in conjunction with the divorce case DF05-06363-V, all three parties have appeared and participated in proceedings in both cases, and it is not in the children's best interest that default *441 judgment against [Mother] be granted. [Valdez] received notice of all pleadings relating to the child [S.M.V.].
In its conclusions of law, the trial court concluded in relevant part, "[S.M.] Valdez's name shall be changed to [S.M.] Vo and her birth certificate shall be amended to state that Alexander Vo is her biological father."
On November 29, 2007, the trial court signed a "Court Order of Duplicate Filing," which bore the cause numbers of both the SAPCR and the divorce proceeding and stated in relevant part
Be it remembered that on November 29, 2007, the Court on the Court's Motion and after reviewing the pleadings on file herein is of the opinion that certain pleadings and orders concerning minor child [S.M.V.] should be duplicate filed in both of the cause numbers as listed above for purposes of clarity of the Court's related case file records.
IT IS THEREFORE ORDERED that the District Clerk shall copy the following pleadings (attached hereto as exhibit A) from Cause No. DF05-6363-V and place such copies in Cause No. DF06-16497-V:
1. 1st Amended Counter-Petition for Divorce filed by [Mother], dated August 2, 2006.
2. Order severing Suit Affecting Parent Child Relationship, dated August 24, 2006.
(emphasis original). On that same date, Valdez filed a timely request for additional findings of fact and conclusions of law in which he requested the trial court specify the basis for the limitation of his rights and duties as a joint managing conservator of S.M.V. Valdez's motion for new trial was denied after a hearing on December 3, 2007. This appeal timely followed.

II. PLEADINGS
We begin with Valdez's second issue, in which he asserts the trial court erred when it (1) allowed Mother to proceed with her case in chief and put on evidence with no pleading on file in this case and (2) "took it upon itself to order the clerk to file a pleading from another cause on behalf of [Mother] and the pleading ordered to be filed on behalf of [Mother] was a superceded pleading."

A. Applicable Law and Standard or Review
"`A court's jurisdiction to render judgment is invoked by pleadings, and a judgment unsupported by pleadings is void.'" In re C.C.J., 244 S.W.3d 911, 919 (Tex.App.-Dallas 2008, no pet.) (quoting Ex parte Fleming, 532 S.W.2d 122, 123 (Tex. Civ.App.-Dallas 1975, no writ)); see also Stoner v. Thompson, 578 S.W.2d 679, 682 (Tex.1979) (plaintiff may not sustain favorable judgment on unpleaded cause of action in the absence of trial by consent). However, "`[p]leadings are of little importance in child custody cases and the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rulings.'" In re B.M., 228 S.W.3d 462, 465 (Tex.App.-Dallas 2007, no pet.) (quoting MacCallum v. MacCallum, 801 S.W.2d 579, 586 (Tex. App.-Corpus Christi 1990, writ denied)); see also City of San Antonio v. Rodriguez, 828 S.W.2d 417, 418 (Tex.1992) ("the decisions of the courts of appeals [should] turn on substance rather than procedural technicality"). Whether a trial court's jurisdiction was properly invoked is a question of law, which we review de novo. See Williams v. Schneiber, 148 S.W.3d 581, 583 (Tex.App.-Fort Worth 2004, no pet.) (citing Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998)).
*442 Rule 71 of the Texas Rules of Civil Procedure, titled "Misnomer of Pleading," provides
When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated. Pleadings shall be docketed as originally designated and shall remain identified as designated, unless the court orders redesignation. Upon court order filed with the clerk, the clerk shall modify the docket and all other clerk records to reflect redesignation.
TEX.R. Civ. P. 71.
"Every trial court has the `inherent power' to control the disposition of the cases on its docket `with economy of time and effort for itself, for counsel, and for litigants.'" Metzger v. Sebek, 892 S.W.2d 20, 38 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (citing Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)); see also Eichelberger v. Eichelberger, 582 S.W.2d 395, 398 (Tex.1979) ("the inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity"). "`How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" Metzger, 892 S.W.2d at 38 (quoting Landis, 299 U.S. at 254, 57 S.Ct. 163). We apply an abuse of discretion standard to review a trial court's actions pursuant to its inherent power. See Kutch v. Del Mar Coll., 831 S.W.2d 506, 512 (Tex.App.-Corpus Christi 1992, no writ). We review the entire record and view the evidence most favorably to the trial court's ruling. See id. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules and principles. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985).

B. Application of Law to Facts

1. No Pleadings on File
In the first subpart of his second issue, Valdez contends Mother had no pleadings on file in this severed case to support her claim for relief. He asserts that while pleadings in family law cases "have a long history of being liberally construed," the "entire lack of pleading" is different from the liberal construction of a written pleading on file and is neither "trial by ambush" nor a "technicality." According to Valdez, rule 71 is inapplicable to this case. Valdez asserts that rule "historically involves one case between parties, not a severed case then involving a third party." Further, Valdez argues "there was not simply a misnomer of the cause number," because the style of the pleadings he requested to strike referred to the divorce proceedings, whereas "the case regarding [S.M.V.] was a [SAPCR], but not in the context of a divorce."
Mother[6] responds she had "pleadings on file with the court when this case was called to trial." According to Mother, although the pleadings she filed with the court "did not contain the case number for the paternity case" as a result of a typographical error, those pleadings made a request for relief regarding S.M.V. Mother argues that, pursuant to rule 71, justice requires the court treat such pleadings as properly filed or designated with the correct case number. Mother contends her pleadings were "clearly meant to apply to both cases" and Valdez was on notice of the relief requested by her. Further, Mother asserts "that [Valdez] has the burden *443 of proof to show that the parent(s) should not be appointed managing conservators of [S.M.V.] and that she was not required to file any pleadings, but that her appearance was sufficient."
The record shows the trial court severed the suit affecting S.M.V. from the divorce proceeding and ordered the suit affecting S.M.V. to be "filed and assigned a new cause number." At trial, counsel for Valdez objected to any relief for Mother regarding S.M.V. on the basis that Mother's "only live pleadings are in a Cause Number that does not deal with [S.M.V.]." The trial judge overruled that objection and stated she was "not inclined to strike pleadings and have this trial happen by ambush and be won on a technicality because the wrong Cause Number is at the top of the pleadings." In its findings of fact, the trial court found "this paternity case was severed from cause number DF05-06363-V, both [Mother] and [Vo] have pleadings in that companion divorce case, this paternity case is being tried in conjunction with the divorce case DF05-06363-V, all three parties have appeared and participated in proceedings in both cases, and it is not in the children's best interest that default judgment against [Mother] be granted." In addition, the trial court found in its findings of fact "[Valdez] received notice of all pleadings relating to the child [S.M.V.]."
Valdez cites no authority to support his contention rule 71 "involves one case between parties, not a severed case then involving a third party." Although we found no cases specifically on point regarding the applicability of rule 71 in severed cases involving a third party, the language of the rule, on its face, makes no limitations pertaining to such cases. See TEX.R. CIV. P. 71. Rather, the rule provides, "When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated." Id. (emphasis added). Further, with respect to Valdez's implication rule 71 is limited to situations involving "one case between parties," Mother cites Gehrke v. State, 363 S.W.2d 490, 491 (Tex.Civ.App.-San Antonio 1962, writ ref'd), in her brief on appeal. In Gehrke, a party's "motion to set aside judgment" that bore the cause number of a cause in which judgment had been entered was treated, pursuant to rule 71, as a pleading in a separate action for a bill of review. Id. Thus, Gehrke applied rule 71 in the context of two separate cases. See id. Finally, with respect to Valdez's assertion this case does not involve "simply a misnomer of the cause number," rule 71 has been specifically recognized as pertaining to a trial court's handling of misnamed pleadings. See Cherry v. N. Am. Lloyds of Tex., 770 S.W.2d 4, 6 (Tex.App.-Houston [1st Dist.] 1989, writ denied) (incorrect title to pleading does not change nature of pleading). Accordingly, we conclude rule 71 is applicable to the facts before us.
Moreover, regardless of whether the trial court acted under rule 71 in this case, the Texas Supreme Court has held the decisions of the courts of appeals should turn on substance rather than procedural technicalities. See Rodriguez, 828 S.W.2d at 418; see also In re B.M., 228 S.W.3d at 465 ("[p]leadings are of little importance in child custody cases and the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rulings"). Here, it appears from the trial judge's statement at trial that the trial court considered the claims pertaining to S.M.V. in Mother's third amended counter-petition, which bore the cause number of the divorce proceeding, to be filed in the SAPCR. The trial court thus avoided allowing the case to turn on a "procedural *444 technicality" or "narrow technical ruling." See Rodriguez, 828 S.W.2d at 418; In re B.M., 228 S.W.3d at 465. Valdez does not contend, and the record does not show, he was confused or misled as to the relief sought by Mother regarding S.M.V. See Rodriguez, 828 S.W.2d at 418 (notice of appeal effective even though it bore wrong case number when there was no suggestion of confusion); Bynog v. Prater, 60 S.W.3d 310, 312 (Tex.App.-Eastland 2001, pet. denied) (motion to dismiss filed in wrong case after severance was properly considered by trial court where use of wrong case number was not misleading). Accordingly, on the facts before us, we conclude the trial court did not err by allowing Mother to proceed with her case in chief and put on evidence in this case.

2. Duplicate Filing of Pleading
In the second subpart of his second issue, Valdez contends "[t]here is no precedent for the trial court's action in rendering an order for duplicate filing and as such, constituted error." According to Valdez, there was no motion or other action pending before the trial court at the time of its "Court Order of Duplicate Filing." Further, Valdez argues the first amended counter-petition of Mother filed in the SAPCR by the trial court had been superceded by an amended pleading and therefore "was a nullity and cannot support the judgment or any portion thereof in this case." Finally, Valdez asserts the trial court gave him no notice of its order of duplicate filing and he had no opportunity to object prior to this appeal.[7]
Mother responds the trial court "was within its power to sign an order it deemed necessary to clarify the proceedings in one of its cases, and to clarify its procedures." In addition, Mother argues this specific issue is not properly before this Court because Valdez "did not file any type of motion or complaint regarding this order, nor did he file an appeal on this specific order." Finally, Mother contends "this administrative procedure by the trial court did not have any effect on the final judgment nor would overturning this order result in a different jury verdict." Therefore, Mother asserts, "[a]t most, this is harmless error."
"Normally, when one or more issues are severed from a pending cause of action, either new pleadings are filed in the new cause number or former pleadings are copied, renumbered, and filed in the new cause number." Smith Protective Servs. v. Martin, 711 S.W.2d 675, 679 (Tex.App.-Dallas 1986, no writ). In the November 29, 2007 order at issue, the trial court, in relevant part, ordered the district clerk to copy from the divorce proceeding Mother's August 2, 2006 first amended counter-petition for divorce. Further, the trial court ordered the district clerk to place such copy in the SAPCR for "purposes of clarity of the Court's related case file records."
Every trial court has the "inherent power" to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. See Metzger, 892 S.W.2d at 38. "Clarity" is defined as the quality or condition of being easily understood. See WEBSTER'S NEW WORLD COLLEGE DICTIONARY 259-60 (3d ed.1997). Based on that definition, an action taken for purposes of clarity is presumably conducive to "economy of time and effort." Valdez does not explain, and the record does not show, how an order on the trial's court's own motion to *445 file former pleadings in a severed cause number for "purposes of clarity of the Court's related case file records" is outside the court's inherent power to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. See Metzger, 892 S.W.2d at 38. Further, the issue of whether the pleading ordered to be duplicate filed was a "nullity" is immaterial in light of our reasoning and conclusion above that the trial court did not err by allowing Mother to proceed with her case in chief and put on evidence in this case. Assuming, without deciding, Valdez's issue regarding the trial court's order for duplicate filing is properly before this Court, we conclude, on this record, the trial court did not abuse its discretion by ordering the duplicate filing of Mother's first amended counter-petition for divorce.
We decide against Valdez on his second issue.

III. NAME CHANGE
Next, we address Valdez's first issue, in which he contends "the trial court erred when it ordered the name of the child, [S.M.] Valdez, to be changed to [S.M.] Vo."[8]

A. Standing
In her appellate argument regarding Valdez's first issue, Mother contends for the first time Valdez has failed to cite any case law or statutes "that would support that he has standing to contest the name change of the minor child when both biological parents have agreed to change the name of the minor child." Valdez responds in his reply brief on appeal (1) he was appointed as a joint managing conservator of S.M.V. by the jury duly empaneled in this case and (2) he had standing to bring the original SAPCR.

1. Applicable Law and Standard of Review
As an element of subject-matter jurisdiction, standing is an issue that can be raised at any time. See In re H.C.S., 219 S.W.3d 33, 34 (Tex.App.-San Antonio 2006, no pet.) (citing Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 445 (Tex.1993)). Standing is a question of law and is reviewed de novo. Doncer v. Dickerson, 81 S.W.3d 349, 358 (Tex.App.-El Paso 2002, no pet.). In the SAPCR context, standing is governed by the Texas Family Code. See In re Smith, 262 S.W.3d 463, 467 (Tex.App.-Beaumont 2008, no pet.). "In order to determine whether the family code limits standing in a suit to establish parentage, a statutory construction is necessary." In re H.C.S., 219 S.W.3d at 34. Under family code section 160.602, titled "Standing to Maintain Proceeding," a proceeding to adjudicate parentage may be maintained by "a man whose paternity of the child is to be adjudicated." *446 TEX. FAM.CODE ANN. § 160.602(a)(3) (2008). Further, the family code provides that, in an order adjudicating parentage pursuant to such a proceeding, "[o]n request of a party and for good cause shown, the court may order that the name of the child be changed." Id. § 160.636(e).

2. Application of Law to Facts
Here, the record shows Valdez is "a man whose paternity of the child is to be adjudicated." See id. § 160.602(a)(3). Therefore, Valdez has standing with regard to the SAPCR. See id. (proceeding to adjudicate parentage may be maintained by "a man whose paternity of the child is to be adjudicated"). The family code specifically provides for consideration of a name change within the context of such a proceeding. See id. § 160.636(e) (in order adjudicating parentage, "[o]n request of a party and for good cause shown, the court may order that the name of the child be changed"). Mother cites no authority limiting a party's standing to contest a name change in a proceeding to adjudicate parentage when both biological parents have agreed to such a change, and we have found none. Accordingly, we conclude Valdez does not lack standing to contest the name change at issue. See id. §§ 160.602(a)(3), 160.636(e).

B. Granting of Name Change

1. Standard of Review
We review the trial court's granting of a name change for a minor child under an abuse of discretion standard. In re Guthrie, 45 S.W.3d 719, 723 (Tex.App.-Dallas 2001, pet. denied). The abuse of discretion standard in a family law case overlaps the traditional sufficiency standard of review. In re M.C.F., 121 S.W.3d 891, 895 (Tex.App.-Fort Worth 2003, no pet.) (citing In re C.R.O., 96 S.W.3d 442, 447 (Tex.App.-Amarillo 2002, pet. denied)). However, under an abuse of discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether a trial court abused its discretion. Id.; see also Stamper v. Knox, 254 S.W.3d 537, 542 (Tex. App-Houston [1st Dist.] 2008, no pet.). Thus, in applying the abuse of discretion standard, we engage in a two-pronged analysis: (1) whether the trial court had sufficient evidence upon which to exercise its discretion and (2) whether the trial court erred in applying its discretion. See Vardilos v. Vardilos, 219 S.W.3d 920, 921 (Tex.App.-Dallas 2007, no pet.).
When addressing a legal sufficiency challenge, we view the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.2005). We determine whether the evidence at trial would enable reasonable and fair-minded people to reach the finding under review. Id. If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex.1998). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex.2004). In reviewing a factual sufficiency challenge, we consider and weigh all the evidence in the record, both in support of and against the finding, and set aside a finding only if the evidence that supports it is so weak or against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. Dow *447 Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex.2001). Finally, with regard to whether the trial court abused its discretion, we determine whether, based on the evidence, the trial court acted in an arbitrary or unreasonable manner or without reference to guiding rules and principles. See Downer, 701 S.W.2d at 241-42; In re M.C.F., 121 S.W.3d at 898.

2. Applicable Law
Under section 160.636(e) of the Texas Family Code, a court making an order adjudicating parentage may order the name of a child changed "on request of a party and for good cause shown." See TEX. FAM.CODE ANN. § 160.636(e). Further, the proponent of a name change in a paternity action must also show "how the change of name would be in the child's best interest." In re M.C.F., 121 S.W.3d at 895.
Rule 299 of the Texas Rules of Civil Procedure, titled "Omitted Findings," provides in relevant part
When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.
TEX.R. Civ. P. 299.

3. Application of Law to Facts
Valdez contends the trial court had "no evidence, and certainly insufficient evidence" upon which to grant the name change as to S.M.V. Further, Valdez asserts the trial court abused its discretion in ordering S.M.V.'s name changed in this case. Mother asserts it was within the trial court's discretion to order a name change based on the evidence presented at trial.[9]
A party seeking a name change for a minor child in a paternity action must show both "good cause" for the name change and "how the change of name would be in the child's best interest." In re M.C.F., 121 S.W.3d at 895. Here, the trial court made no finding of fact regarding "good cause" for the name change. Further, no party requested such a finding. However, the trial court found in its finding of fact number six "[i]t is in the best interest of the child [S.M.] Valdez that her name be changed to [S.M.] Vo." Accordingly, the element of good cause, if supported by evidence, will be supplied by presumption in support of the judgment. See TEX.R. CIV. P. 299; cf. In re S.K.A., 236 S.W.3d 875, 902 (Tex.App.-Texarkana 2007, no pet.) ("best interest of the child" is statutorily prescribed "element" for parental rights termination and may be presumed finding pursuant to rule 299).

*448 a. Good Cause
We have found no appellate decisions addressing the definition of good cause in the context of section 160.636(e). See TEX. FAM.CODE ANN. § 160.636(e). However, in conducting a good cause analysis pursuant to section 160.636, the Fort Worth Court of Appeals observed good cause is defined in Black's Law Dictionary as a "legally sufficient reason." In re M.C.F., 121 S.W.3d at 896. Accordingly, we examine the record for evidence as to a legally sufficient reason for changing S.M.V.'s name.
Mother testified at trial she and Valdez had a son together in 2001. Subsequently, Mother and Valdez discontinued their relationship. They reconciled in March 2002. Shortly after that reconciliation, Mother discovered she was pregnant with S.M.V. and told Valdez that Vo was the father of her unborn child. Mother described Valdez as "jealous." She stated Valdez "did not want to bring another man into the picture, he did not want any other man around me." Mother testified she and Valdez decided "not to tell [Vo] anything." Mother gave birth to S.M.V. on October 22, 2002. Mother and Valdez were married on June 17, 2003. In February 2004, after approximately eight months of marriage, Mother left Valdez.
Mother testified she told Vo for the first time in July 2004 that "he may have been [S.M.V.]'s father." According to Mother, Vo was excited and "came right over to see [S.M.V.] that same day." After that, Mother testified, Vo visited S.M.V. "almost every day" and brought diapers, wipes, and clothing for S.M.V. However, Mother testified, Valdez was "angry." Mother stated, "[Valdez] said that [Vo] is not going to be a part of [S.M.V.]'s life, that he was going to be taking care of her. And for me to tell [Vo] to stay out of her life." Mother testified that a couple of weeks later, Valdez and Vo had a physical confrontation. Near the end of July 2004, Mother testified, Valdez showed her "a paternity test saying that [Valdez] was the father of [S.M.V.]." Mother testified Vo then "pretty much stepped away" from being part of S.M.V.'s life.
Mother stated she resumed a relationship with Vo in June 2005. Subsequently, Mother and Vo had another daughter, A.R.V. Mother testified she is no longer romantically involved with Vo, but the two of them "communicate good." Mother testified S.M.V. is "close" with Vo and his family, including Vo's other children. According to Mother, Vo is "a loving and caring father." Further, Mother testified her children "have a close bond with each other" and they are "very close."
In its August 24, 2006 "Order Severing Suit Affecting the Parent-Child Relationship," the trial court found S.M.V. was not the biological child of Valdez and was the biological child of Vo. Further, in its September 20, 2007 order adjudicating parentage, the trial court appointed Mother, Valdez, and Vo joint managing conservators of S.M.V. In addition, in its conclusions of law, the trial court concluded in relevant part S.M.V.'s "birth certificate shall be amended to state that Alexander Vo is her biological father."
The changing of S.M. Valdez's surname to that of a joint managing conservator who is named as a biological parent on her birth certificate clarifies S.M.V.'s identity and avoids potential future confusion that might be caused by S.M.V. possibly having a name different from either biological parent. Cf. Guthrie, 45 S.W.3d at 726 (reasons for biological father wanting to change child's name to his from that of former husband of mother included possible confusion and fact child had no tie of heritage to name of mother's former husband). Accordingly, we conclude the record *449 contains some evidence of "good cause" for such a change and, therefore, a finding of good cause for the name change of S.M.V. is implied pursuant to rule 299. See TEX.R. CIV. P. 299. Further, we conclude the evidence of good cause in the record would enable reasonable and fair-minded people to reach the finding under review. See City of Keller, 168 S.W.3d at 827. Thus, such evidence is legally sufficient to support the trial court's implied finding. See id.
Valdez argues Mother and Vo both testified at trial S.M.V. and her half sibling, Mother's child with Valdez, are "very close." Further, Valdez asserts Mother testified at trial S.M.V. and her half sibling, whose surname is Valdez, do not know they are not full-blooded siblings.[10] However, Valdez does not explain how the evidence he cites weighs against the changing of S.M. Valdez's surname to that of a conservator who is biologically related to her and who is named as a biological parent on her birth certificate. Further, Valdez cites no authority, and we have found none, to support his contention the trial court's implied finding of good cause was "clearly wrong and manifestly unjust" in light of such evidence. See Dow Chem. Co., 46 S.W.3d at 242. Accordingly, we conclude the evidence was factually sufficient to support the trial court's implied finding of good cause for the name change of S.M.V.

b. Best Interest
Generally, courts will exercise the power to change a child's name reluctantly and only when the substantial welfare of the child requires it. See Guthrie, 45 S.W.3d at 724. Courts consider the factors that address the best interest of the child, not the needs of a particular parent or customs or traditions that reflect a constitutionally prohibited inequality. Id. at 725. Factors that have been considered proper in a best interest test are
whether the changed name or the present name would best avoid embarrassment, inconvenience, or confusion for the custodial parent or the child;
whether it would be more convenient or easier for the child to have the same name as or a different name from the custodial parent, either the changed name or the present name;
whether the changed name or the present name would help identify the child as part of a family unit;
the length of time the surname has been used;
parental misconduct, such as support or nonsupport or maintaining or failing to maintain contact with the child;
the degree of community respect associated with the present or changed name;
whether the change will positively or adversely affect the bond between the child and either parent or the parents' families;
any delay in requesting or objecting to name change;
the preferences of the child;
the age and maturity of the child;
when the child maintains the mother's surname, assurances by the mother that *450 she would not change her name if she married or remarried; and
whether the parent seeking the change is motivated by an attempt to alienate the child from the other parent.
Id. Thus, determination of the child's best interest in a name change is fact specific. Id.
Here, Mother did not testify she intended to continue using the name "Valdez" as her own last name.[11] Thus, the potential for confusion in this case arises from the possibility that, but for the name change, S.M.V. would have a surname different from that of either of her biological parents. With regard to identifying as part of a family unit, the evidence shows S.M.V. has a half sibling with the surname Valdez and a full sibling with the surname Vo. Mother testified her children "have a close bond with each other" and are "very close." Further, Mother testified S.M.V. and her full sibling, A.R.V. are "bonded together" and "[S.M.V.] asks for [A.R.V.] all the time and plays with her all the time." Sharing a surname would further the bond of S.M.V. and her full sibling. With regard to the length of time the surname being changed had been used, S.M.V. was four years old at the time of trial, and thus was at an early point in her life. Mother testified at trial S.M.V. spent time with both Vo and Valdez, and both provided some financial support. Accordingly, we conclude there is legally sufficient evidence in the record to support the trial court's finding the name change at issue was in S.M.V.'s best interest.
Valdez contends Mother's testimony as to her children being "very close" refers only to S.M.V's relationship with her half sibling. However, Mother testified as follows:
Q. Are your children close?
A. Yes, they are very close.
Q. Especially [S.M.V.] and [her half sibling]?
A. Yes.
The record shows Mother testified her children were very close, then specified S.M.V. and her half sibling are very close. Thus, Valdez's contention is not supported by the record. In addition, Valdez asserts Vo testified S.M.V. and her half sibling are very close. However, Valdez does not explain, and the record does show, how such evidence preponderates against the evidence of S.M.V.'s closeness to her full sibling and the considerations of identity and avoidance of confusion. Further, Valdez cites no authority, and we have found none, to support his contention that, on the facts before us, the trial court's finding that the name change at issue was in the best interest of S.M.V. was "clearly wrong and manifestly unjust." See Dow Chem. Co., 46 S.W.3d at 242. Therefore, we conclude the evidence in the record was factually sufficient to support the trial court's finding the name change at issue was in S.M.V.'s best interest.

c. Abuse of Discretion
An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. In re M.C.F., 121 S.W.3d at 899. We concluded above the evidence was legally and factually sufficient to support findings regarding "good cause" and "best interest" as to the name change at issue. Because the record does not show the trial court acted without reference to any guiding rules or principles or in an arbitrary or unreasonable *451 manner, we conclude the trial court did not abuse its discretion in changing the name of S.M. Valdez to S.M. Vo. Valdez's first issue is decided against him.

IV. MOTION FOR NEW TRIAL
In his third issue, Valdez contends the trial court erred by refusing to grant a new trial on newly discovered evidence Vo is now incarcerated on drug charges pending at the time of trial. Valdez asserts at the time this case was called to trial, Vo had felony drug charges pending against him and the jury "heard of the possibility [Vo] may go to prison." According to Valdez, by the time of the motion for new trial, "[Vo] was a self-admitted drug dealer and had been sentenced to prison." Valdez argues this information was not available for presentation to the jury in this matter at the time of trial. Further, he contends the evidence of Vo's conviction and incarceration is so compelling that it could have altered the jury's decision in appointing Vo as a joint managing conservator. Therefore, Valdez argues, "it was error not to grant a new trial on this important information regarding the biological father's ability to truly be a responsible parent for [S.M.V.]."
Mother asserts the evidence of Vo's criminal conviction is not newly discovered evidence because events that occur after trial do not constitute newly discovered evidence. Mother contends Valdez did not object at the time the court made such a determination as to the evidence of Vo's criminal conviction and, therefore, this matter should not be considered on appeal. Further, Mother argues Valdez cannot meet the burden of newly discovered evidence because (1) the evidence of Vo's criminal conviction is cumulative in that the indictment was used at trial, (2) Valdez merely seeks to impeach Vo by his conviction and Mother by her association with Vo, and (3) Valdez cannot show "such evidence would result in a different verdict or that had the conviction occurred before the trial, [Mother] would not have been appointed as the primary managing conservator of the children."

A. Standard of Review and Applicable Law
A party seeking a new trial on the ground of newly discovered evidence must show (1) the evidence has come to his knowledge since the trial, (2) it was not owing to want of diligence that the evidence did not come to his knowledge sooner, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted. Sifuentes v. Tex. Employers' Ins. Ass'n, 754 S.W.2d 784, 787 (Tex.App.-Dallas 1988, no writ) (citing Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex.1983), overruled on other grounds by Moritz v. Preiss, 121 S.W.3d 715 (Tex. 2003)); In re A.G.C., 279 S.W.3d 441, 453 (Tex, App.-Houston [14th Dist.] 2009, no pet.). "Evidence not in existence prior to judgment cannot form the basis of a new trial." Sifuentes, 754 S.W.2d at 787.
Whether a motion for new trial on the ground of newly discovered evidence will be granted or refused is generally a matter addressed to the sound discretion of the trial court. In re A.G.C., 279 S.W.3d at 453. However, in matters relating to child custody, it can be error to refuse to grant a motion for new trial even though the evidence is not newly discovered, when there is an extreme case and the evidence is sufficiently strong. C. v. C., 534 S.W.2d 359, 361 (Tex.Civ.App.-Dallas 1976, writ dism'd w.o.j.) (trial court abused discretion in overruling motion for new trial where evidence showed father had violent temper and harshly disciplined children); Hefley v. Hefley, 859 S.W.2d 120, *452 125 (Tex.App.-Tyler 1993, no writ) (trial court abused discretion in overruling motion for new trial where evidence showed child was sexually abused by friend of father). "No abuse of discretion is shown unless the evidence presented in support of the motion, and not offered at the original trial, strongly shows that the original custody order would have a seriously adverse effect on the interest and welfare of the children and that presentation of such evidence at another trial would probably change the result." C. v. C., 534 S.W.2d at 361.

B. Application of Law to Facts
Here, the record shows the evidence of Vo's conviction was not in existence prior to the trial court's order. Therefore, that evidence does not satisfy the burden that must be met to obtain a new trial on the ground of newly discovered evidence. See Sifuentes, 754 S.W.2d at 787. Further, Valdez does not argue, and the record does not show, the nature of the evidence in this case is so extreme that it strongly shows the original custody order would have a seriously adverse effect on the interest and welfare of the children and presentation of such evidence at another trial would probably change the result. Cf. In re S.K.A., 236 S.W.3d at 905 (while pattern of criminal actions leading to incarceration is "certainly a factor to consider" in determining whether termination of parental rights is in child's best interest, criminal convictions alone do not necessarily lead to such conclusion). Because the record does not show the evidence of Vo's conviction was "newly discovered" or so extreme as to meet the standard set forth in C. v. C., we conclude the trial court did not abuse its discretion by denying Valdez's motion for new trial. We decide against Valdez on his third issue.

V. CONCLUSION
On the facts before us, we conclude the trial court did not abuse its discretion by changing the name of S.M. Valdez to S.M. Vo. Further, the trial court did not (1) err by allowing Mother to proceed with her case in chief and put on evidence in this case or (2) abuse its discretion by ordering the duplicate filing of Mother's first amended counter-petition for divorce. Finally, on this record, the trial court's denial of Valdez's motion for new trial was not an abuse of the trial court's discretion. We decide Valdez's three issues against him. The trial court's order is affirmed.
NOTES
[1] We identify the children involved in this case by their initials. See TEX. FAM.CODE ANN. § 109.002(d) (Vernon 2008).
[2] The Honorable Bea Ann Smith, Justice, Court of Appeals, Third District of Texas at Austin, Retired, sitting by assignment.
[3] Although Valdez presents three issues on appeal, his second issue asserts two grounds.
[4] The suit severed in the trial court's August 24, 2006 order also addressed the interest of another child of Mother's, A.R.V., who is not at issue in this appeal.
[5] The reporter's record in this case is a partial one. The record shows Valdez followed the requirements of rule of appellate procedure 34.6(c) regarding the filing of a statement of issues to be presented on appeal. See TEX. R.APP P. 34.6(c). Further, the issues Valdez asserts were set out in that statement of issues. Therefore, pursuant to rule 34.6(c), we presume the partial reporter's record constitutes the entire record for purposes of reviewing the stated issues. See id.
[6] Appellee Vo did not file an appellate brief in this Court.
[7] Valdez asserts he first learned of the filing of the order complained of only "when a review of the Court's file was conducted after the motion for new trial was ruled upon and this appeal perfected."
[8] Valdez asserts in part in his argument on this issue that "[w]hether there were proper pleadings to support the name change is an issue herein as well as an issue related to the totality of the proceedings" because the only request for a name change of S.M.V. was asserted by Mother in pleadings that were not "on file in this cause," but rather, were filed in the divorce proceeding. However, we concluded above that on the facts before us, the trial court did not err by allowing Mother to proceed with her case in chief and put on evidence in this case. Likewise, we conclude on these facts the trial court did not err to the extent it concluded pleadings supported the judgment in this case regarding the name change of S.M.V. See Rodriguez, 828 S.W.2d at 418 ("the decisions of the courts of appeals [should] turn on substance rather than procedural technicality"); In re B.M., 228 S.W.3d at 465 ("[p]leadings are of little importance in child custody cases and the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rulings").
[9] In addition, Mother argues Valdez "has waived all complaints as to the sufficiency of the findings of fact and conclusions of law." In support of that argument, Mother cites Swacker v. Jet Constr. & Realty Co., 535 S.W.2d 715 (Tex.Civ.App.-Eastland 1976, writ ref'd n.r.e.). However, Swacker involved an appeal taken without a statement of facts pursuant to Texas Rule of Civil Procedure 307. See id. at 716. Mother does not explain how Swacker applies to the fact situation at hand or cite additional authority in support of her argument. Accordingly, we conclude Mother's argument regarding Valdez's waiver of "all complaints as to the sufficiency of the findings of fact and conclusions of law" presents nothing for this Court's review. See TEX. R.APP. P. 38.1(i); 38.2(a).
[10] In addition Valdez asserts evidence presented at the hearing on his motion for new trial shows (1) S.M.V. knows how to write her name and writes it "[S.] Valdez," (2) Valdez has periods of possession of S.M.V. and S.M.V. is treated as a member of the family on those visits, and (3) Vo is currently in jail and does not have the ability to pay child support for S.M.V. However, we consider only the evidence before the trial court at the time it made the decision complained of. See Maximum Med. Improvement, Inc. v. County of Dallas, 272 S.W.3d 832, 834 n. 3 (Tex.App.-Dallas 2008, no pet.); In re A.W.P., 200 S.W.3d 242, 245 (Tex.App.-Dallas 2006, no pet.).
[11] The record shows Mother requested and was granted a name change to her maiden name of Brannon on September 20, 2007.