**AFFIRM; and Opinion Filed July 9, 2010.**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-12-00771-CV**

**IN THE INTEREST OF G.E.P., A CHILD**

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF11-06382**

## MEMORANDUM OPINION

Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice Fillmore

Appellant Samantha Faith Pazora appeals the trial court's order changing the surname of her daughter to the surname of the child's father, appellee Jonathan Lloyd Coker. In four issues, Pazora asserts there was legally insufficient evidence of good cause for the name change, there was legally insufficient evidence that the name change was in the child's best interest, and, to the extent the trial court based the name change on stigma associated with a child born to unmarried parents, the trial court abused its discretion. We affirm. We issue a memorandum opinion in this case because the law to be applied is well settled. *See* TEX. R. APP. P. 47.2(a), 47.4.

### Background

G.E.P. was born out of wedlock in April 2011. The day after the child's birth, Pazora filed her original petition to establish the parent-child relationship between Coker and G.E.P. In his counter-petition filed within one week of the child's birth, Coker requested that the trial court

order G.E.P.'s surname be changed from Pazora to Coker. The parties mediated the case. Under the mediated settlement agreement, Pazora and Coker were appointed joint managing conservators, and all issues were resolved except the issue of the name change.

In November 2011, the trial court conducted a hearing on the issue of Coker's request for name change. The trial court orally announced it was granting the name change. In the "Final Order in Suit Affecting Parent-Child Relationship" signed in March 2012, the trial court granted the request for name change "after hearing evidence on the issue." In her motion for new trial, Pazora asserted there was factually and legally insufficient evidence to support the order changing the child's name. No order was entered on Pazora's motion for new trial. Pazora filed this appeal of the trial court's order changing G.E.P.'s surname.

## Sufficiency of the Evidence

In her first three issues on appeal, Pazora contends the trial court abused its discretion in ordering G.E.P.'s surname changed because there was no evidence or legally insufficient evidence of good cause for the name change and there was no evidence or legally insufficient evidence that the name change was in the child's best interest.

### Standard of Review

The trial court's granting of a name change is reviewed under an abuse of discretion standard. *In re Guthrie*, 45 S.W.3d 719, 723 (Tex. App.—Dallas 2001, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding rules or principles. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.).

When, as here, no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *See* TEX. R. CIV. P. 299; *see also Spir Star AG v. Kimich*, 310 S.W.3d 868, 871–72 (Tex. 2010). A trial court's findings are

–2–

reviewable for legal sufficiency of the evidence under the same standard that is applied in reviewing the evidence supporting a jury's answer. In reviewing for legal sufficiency of the evidence, we consider the evidence in the light most favorable to the judgment, disregarding all contrary evidence that a reasonable fact finder could have disbelieved. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id*. at 827. However, in family law cases, the abuse of discretion standard of review overlaps the traditional sufficiency standard of review. *In re S.M.V.*, 287 S.W.3d 435, 446 (Tex. App.— Dallas 2009, no pet.). Under an abuse of discretion standard, legal insufficiency is not an independent ground of error, but rather a relevant factor in assessing whether a trial court abused its discretion. *In re A.B.P.*, 291 S.W.3d at 95; *see also Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.) (under abuse of discretion standard, legal sufficiency is not independent ground of error; it is only a relevant factor in assessing whether trial court abused its discretion).

To determine whether the trial court abused its discretion because the evidence is insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *In re A.B.P.*, 291 S.W.3d at 95. We conduct the applicable sufficiency review when considering the first prong of the test. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). We then determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id*. An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *In re M.C.F.*, 121 S.W.3d 891, 899 (Tex. App.—Fort Worth 2003, no pet.). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists

to support the trial court's decision. *In re S.M.V.*, 287 S.W.3d at 450; *In re M.C.F.*, 121 S.W.3d at 899.

*Analysis*

The court may order the name of a child changed if the change is in the best interest of the child. TEX. FAM. CODE ANN. § 45.004(a)(1) (West 2008). Name-change issues involving minors are fact-specific in nature. *See In re Guthrie*, 45 S.W.3d at 726.

At the hearing on Coker's request for the name change, the trial court heard testimony from Pazora and Coker. Pazora testified that at the time G.E.P. was born, she discussed with Coker the surname to be given the child. While she knew Coker wanted the child to have his surname, he acquiesced in Pazora giving G.E.P. her surname. At the time of the hearing, Pazora lived with her mother and adoptive father. Pazora and her younger sister had taken the "Pazora" surname of their adoptive father, but her two older half-sisters who also lived in the household have the surname Lara.

Pazora expressed her preference that the child have her surname. She believed that it would help G.E.P. avoid confusion in terms of completing forms and talking to her friends to have her mother's surname, because Pazora will be taking G.E.P. to school in the future and the child resides with Pazora. According to Pazora, she would retain the surname Pazora even if she marries in the future and she does not plan on having other children. She also testified, however, that if she did have other children, they would have the surname of Pazora's spouse, and G.E.P. would retain the surname Pazora or Pazora-Coker if the trial court ordered G.E.P.'s name hyphenated. Pazora testified that if the trial court ordered G.E.P. to have the hyphenated surname of Pazora-Coker, "she could live with that."

Coker testified he loves G.E.P. and wants his daughter to have her biological father's surname. He also testified he wanted to give G.E.P. everything he possibly could and wanted the

best life possible for his daughter. He indicated he had been there for the child since the moment he learned Pazora was pregnant and was trying to be the "greatest" father he could be. Coker testified he had supported Pazora financially and emotionally since he learned Pazora was pregnant, and had been committed to do anything required of him to help Pazora have a healthy pregnancy. Coker testified did not want to have conflict with Pazora or cause her stress, and they were trying to "make things work" when G.E.P. was born. Because Coker and Pazora agreed prior to the birth that the child was to have Coker's surname, Coker was surprised to learn at the hospital after G.E.P.'s birth that Pazora had not given the child Coker's surname. Because he did not want to create conflict with Pazora at that time, Coker did not challenge G.E.P.'s surname at the hospital.

Coker testified that he believed it better for the child to have his surname than the hyphenated surname of Pazora-Coker. He indicated he does not want G.E.P. to be mistreated or misunderstood by children in school because she has a hyphenated surname, and he did not want G.E.P. to be treated differently because of having "two last names." His first-hand experience was that an acquaintance at school had a hyphenated name and, from Coker's point of view, the hyphenated surname was problematic for that child. Coker and Pazora attend the same Catholic church. Coker indicated that he believes there is some stigma in the church and in school for children born out of wedlock.

A party seeking a name change for a minor child must show both "good cause" for the name change and "how the change of name would be in the child's best interest." *See In re S.M.V.*, 287 S.W.3d at 447. "Good cause" in this context means a "legally sufficient reason." *Id*. at 448. The trial court is given wide latitude in determining the best interests of a minor child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). In reviewing the "child's best interest," we may consider a number of factors, including (1) whether the changed name or present name

would best avoid embarrassment, inconvenience, or confusion for the custodial parent or the child; (2) whether it would be more convenient or easier for the child to have the same name as or a different name from the custodial parent, either the changed name or the present name; (3) whether the changed name or the present name would help identify the child as part of a family unit; (4) the length of time the surname has been used; (5) parental misconduct, such as support or nonsupport or maintaining or failing to maintain contact with the child; (6) the degree of community respect associated with the present or changed name; (7) whether the change will positively or adversely affect the bond between the child and either parent or the parents' families; (8) any delay in requesting or objecting to name change; (9) the preferences of the child; (10) the age and maturity of the child; (11) when the child maintains the mother's surname, assurances by the mother that she would not change her name if she married or remarried; and (12) whether the parent seeking the change is motivated by an attempt to alienate the child from the other parent. *In re Guthrie*, 45 S.W.3d at 725–26; *see also In re S.C.S.*, No. 05-09-00832-CV, 2010 WL 3091373, at *2 (Tex. App.—Dallas Aug. 6, 2010, pet. denied) (mem. op.).

Here, the trial court made no explicit findings regarding good cause for the name change or how the name change was in the child's best interest. No party requested such findings pursuant to rule 296 of the rules of civil procedure, and there were no separately entered findings of fact or conclusions of law after the order. *See* TEX. R. CIV. P. 296. Accordingly, the elements of good cause and best interest of the child, if supported by the evidence, will be supplied by presumption in support of the judgment. *See* TEX. R. CIV. P. 299; *In re S.M.V.*, 287 S.W.3d at 447; *see also Spir Star AG*, 310 S.W.3d at 871–72.

On this record, there was evidence of a legally sufficient reason for the name change and, therefore, an implied finding by the trial court of good cause for the name change. Further,

considering the factors articulated by this Court in its *In re Guthrie* opinion, the evidence supports an implied finding by the trial court that the name change is in the best interest of the child because (1) it would best avoid inconvenience and confusion, (2) it would help identify the child as a part of a family unit, (3) it would positively affect the bond with the father, (4) the length of time the prior surname was used was minimal and the age and maturity level of the child was such that the child will not be confused by the name change, and (5) there is no evidence in the record the father's request for the name change was motivated by an attempt to alienate the child from her mother. *See In re Guthrie*, 45 S.W.3d at 725–26. We will address each of these factors in turn.

First, Coker testified that he wanted his daughter to have his surname. Coker was concerned about G.E.P. having the hyphenated surname Coker-Pazora because he thought, based on his prior experience with a childhood acquaintance, that children with hyphenated surnames could be mistreated or misunderstood by other children. Pazora testified she believed it would help G.E.P. in terms of "completing forms" and talking with friends if she had her mother's surname, since the child will be residing with Pazora and Pazora will be taking her child to school. Pazora testified that she could "live with" a hyphenated name for the child if so ordered by the trial court. On this record, the trial court could reasonably have found that a hyphenated name was not in the child's best interest, and that the surname Coker was neither inconvenient nor confusing because it is the surname of her biological father.

Second, in the biological mother's household where the child would be living the majority of the time, "Pazora" is the surname of the grandparents, the child's mother, and the mother's younger sister. In addition, the mother's older two half-sisters living in the home have the surname "Lara." Finally, Pazora testified that if she married and had children, the later-born siblings of the child would have the surname of her spouse. The trial court could reasonably

–7–

have found based on the evidence that in a home where at least two surnames are currently used, and an additional surname will be used if Pazora marries and has children, the surname Coker would help G.E.P. identify with her individual family unit consisting of her biological mother and father.

Third, Coker testified concerning his commitment to the welfare of his child and the importance of being a part of her life. He indicated he was both emotionally and financially supportive of G.E.P. The trial court could reasonably have found based on the evidence that the name change would foster the bond between the child and Coker, since Coker was not the parent with whom the child would be living the majority of the time, and in the household where the child would be living the majority of the time, "Pazora" was the surname of the grandparents, the child's biological mother, and the mother's sister.

Fourth, Coker filed his counter-petition seeking an order from the trial court changing G.E.P.'s surname to his shortly after the child's birth. The hearing on Coker's request took place before the child was eight months of age, and the order was signed by the trial court changing G.E.P.'s surname before the child reached one year of age. The trial court could reasonably have found based on the evidence that there was no delay in requesting the name change, the mother's surname had not been used for a lengthy period of time, and, given the tender age of the child at the time of the name change, G.E.P. would not have had the maturity to grow accustomed to the mother's surname or be confused about the change of surname from Pazora to Coker.

Fifth, Coker testified that prior to G.E.P.'s birth, he and Pazora discussed giving the child Coker's surname. Initially, Pazora agreed that the child would have Coker's surname. Accordingly, Coker was surprised when Pazora gave G.E.P. her surname at the time of birth. Rather than cause disagreement and stress at that time, Coker acquiesced to G.E.P. having Pazora's surname. But the record establishes that Coker sought to change the child's surname

soon after birth. The trial court could reasonably have found based on the evidence that the name change was sought by Coker to accomplish what was initially agreed between the biological parents, and was not motivated by any attempt to alienate the child from her mother.

Accordingly, having reviewed the record in the light most favorable to the trial court's ruling, we conclude that the evidence is legally sufficient to support the trial court's implied finding of good cause for the name change. *See City of Keller*, 168 S.W.3d at 809, 827; *see also Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (trial court does not abuse its discretion if some evidence reasonably supports trial court's decision). With respect to determining the best interest of the child, the trial judge had broad discretion because she had the opportunity to observe and evaluate the personalities involved, weigh the credibility of their testimony, and assess the physical, mental, moral, and emotional needs of the child. *See Bennett v. Northcutt*, 544 S.W.2d 703, 708 (Tex. Civ. App.—Dallas 1976, no writ); *see also In re S.C.S.*, 2010 WL 3091373, at *4. Having considered the relevant factors and the evidence presented, we likewise conclude there was legally sufficient evidence to support the trial court's implied finding that the name change was in the child's best interest. We further conclude the trial court made a reasonable decision based upon the legally sufficient evidence. *See Moroch*, 174 S.W.3d at 857. Because the record does not show the trial court acted without reference to any guiding rules or principles or in an arbitrary or unreasonable manner, we conclude the trial court did not abuse its discretion in changing the child's surname to Coker. Pazora's first, second, and third issues are decided against her.

**Stigma**

In her fourth issue, Pazora asserts that "[t]o the extent the trial court based its ruling" granting the name change "on the father's argument that his surname should be favored because of the alleged 'stigma' associated with children born to unmarried parents, the trial court gave an

unconstitutional preference to the father over the mother" in violation of article I, section 3a of the Texas Constitution, and this error constituted an abuse of discretion. Article I, section 3a of the Texas Constitution provides that "[e]quality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin." TEX. CONST. art. I, § 3a.

Alleged constitutional violations must be raised in the trial court to be preserved for appellate review. *See In re S.A.P.*, 169 S.W.3d 685, 692 (Tex. App.—Waco 2005, no pet.) (citing *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003)). Because Pazora did not raise her constitutional argument in the trial court, she has not preserved her fourth issue for appellate review. TEX. R. APP. P. 33.1(a). However, even assuming Pazora has not waived her fourth issue by failing to raise this issue in the trial court, we are not persuaded by her argument.

As discussed above, the trial court made no explicit findings regarding good cause for the name change or how the name change was in the child's best interest, no party requested such findings pursuant to rule 296 of the rules of civil procedure, and there were no separately entered findings of fact or conclusions of law after the trial court's order. *See* TEX. R. CIV. P. 296. In addressing Pazora's first, second, and third issues, we concluded there was sufficient evidence to support the trial court's order changing the child's surname to that of her father. Findings of good cause and best interest of the child, supported by the evidence, are implied by presumption in support of the judgment. *See* TEX. R. CIV. P. 299; *In re S.M.V.*, 287 S.W.3d at 447).

Coker testified he "thinks" there is some stigma in the church and in school for children born out of wedlock. However, here the trial court made no explicit finding that there was good cause to change G.E.P.'s name to the father's surname or that it was in the child's best interest to favor the father's surname because of a belief by Coker that there is such a stigma in the church and in school. We have concluded there was sufficient evidence to support the trial court's order and the implied findings of good cause for the name change and that the name change was in the

–10–

best interest of the child based on other evidence and testimony heard and considered by the trial court.  There is nothing in the record to support the speculative argument by Pazora that the trial court based its order to any extent on Coker's thoughts regarding stigma in the church or in school resulting from a child born out of wedlock not having her biological father's surname.  Nothing in the record indicates the trial court granted the name change and denied Pazora her equal rights based on her sex.  We resolve Pazora's fourth issue against her.

## Conclusion

Because we conclude the trial court had sufficient evidence upon which to exercise its discretion and did not err in exercising that discretion in ordering the name change, we affirm the trial court's order.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE

120771F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF G.E.P., A CHILD,
Appellant

No. 05-12-00771-CV

On Appeal from the 301st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF11-06382.
Opinion delivered by Justice Fillmore,
Justices O'Neill and Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. It is **ORDERED** that appellee Jonathan Lloyd Coker recover his costs of this appeal from appellant Samantha Faith Pazora.

Judgment entered this 9th day of July, 2013.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE