MOORE, Judge.
J.M.V. (“the mother”) appeals from a judgment of the Montgomery Circuit Court (“the trial court”) insofar as it ordered that the surname of the parties’ child be changed. We reverse.

Procedural Background

On August 1, 2012, J.K.H. (“the father”) filed a petition in the trial court seeking to establish the paternity of E.V. (“the child”), to correct the child’s birth certificate to list him as the child’s father and to change the child’s surname, to establish custody of and visitation with the child, and to establish child support. The mother answered the petition on November 18, 2012. After a trial, the trial court entered a judgment on May 31, 2013, that, among other things, declared the father to be the legal father of the child; changed the child’s surname; awarded the mother physical custody of the child; and awarded the father six weeks’ visitation with the child in the summer, as well as visitation during a part of each Christmas holiday, during spring break and on Thanksgiving in odd years, and during fall break in even years. Both parties filed postjudgment motions, and the mother subsequently filed a notice of appeal on June 13, 2013.[1] On August 7, 2013, the trial court denied both postjudgment motions and stayed enforcement of that part of its judgment changing the surname of the child pending resolution of the mother’s appeal attacking only that aspect of the trial court’s judgment.

Facts

The mother is an officer in the United States Air Force, and the father is an enlisted member of the Air Force. The parties were never married; they met through their employment and began a sexual relationship, which resulted in the mother’s becoming pregnant with the child. The evidence indicated that the parties’ relationship deteriorated after the *1102 mother became pregnant. The parties testified that the father had wanted to be present for the birth of the child but that the mother had opposed his presence out of concern that their careers could be adversely affected if other members of the Air Force learned that she, an officer, had engaged in a sexual relationship with the father, an enlisted man. The parties stopped speaking to each other about a month before the child was born, and the father was not notified when the mother went to the hospital to give birth to the child. The child was born on September 30, 2009, in Alabama. The mother did not list the father on the child’s birth certifí-cate, and she gave the child her surname.
It is undisputed that the mother had been the primary caregiver for the child and that the father had visited with and supported the child during the first two and a half years of his life. The father testified that he had exercised visitation with the child in the presence of the mother except for one two-week period in May 2012 when the child had stayed with him while the mother was unavailable to care for him due to her work obligations. The mother testified that the father had visited the child in her home between 10 and 12 times and that they had met for visitation on 3 other occasions. The father testified that he had paid $750 per month in child support from the time the child was born until May 2012.
The parties became embroiled in a dispute during the May 2012 visitation because the father had not allowed the mother to have telephone contact with the child for two days; the mother threatened to have law-enforcement officials pick up the child if the father did not allow her to contact the child. The father testified that the mother had spoken to the child every day during the visitation up until that point. The mother testified that the father had told her that he does not talk to the child every day, so why should she. The father testified that he had stopped paying child support at that time because the mother informed him that he had no legal rights to the child. The mother maintained that it was the father who had stated that he did not have any legal rights to the child before he stopped making child-support payments. After May 2012, the father did not see the child except through “Skype,” which is a means of communicating via a computer using a Web camera, and even that contact ceased after January 2013. The father testified that the mother had not responded to his attempts to contact her. The evidence indicated that the mother would soon be deployed to Washington, D.C., while the father would remain stationed in Florida, 500 miles away.
The father testified that he had talked to the mother about his desire to change the child’s surname and that she had said it would complicate her situation being an officer. He testified that he does not think the change would be upsetting to the child. The mother testified that she is opposed to changing the child’s name. She testified that, at the time of the trial, the child was three years and seven months old and that he knows his full name. She testified that she thinks it would be very confusing for the child to change his name. She also testified that the child’s passport, medical records, and educational records all have the child listed as “E.V.” She testified that she believes the name change might be harmful to the child due to the possibility of its creating confusion about his identity. She also testified that she is the child’s primary caregiver and that she and the child have the same surname. The mother testified that she does not recall the father’s stating at the time of the child’s birth that he wanted the child to have his surname; she testified that, even if the *1103 father had been present at the child’s birth, she would not have allowed the father to be identified on the birth certificate or allowed the child to have his surname.
The mother testified that the father had recently contacted her leadership in the Air Force and informed them of their relationship. She testified that their relationship is known only to the leadership and is not widely known throughout the Air Force and that it is better for her career that it not become widely known due to her having to supervise enlisted members.

The Trial Court’s Judgment

The trial court stated its rationale with regard to changing the child’s surname:
“[W]ouldn’t it be good cause if the Court considered the fact that during the birth of the child, the father testified that he was not present at the birth due to the fact that the mother thought his presence would jeopardize her career, and he was not allowed to be present, therefore, not allowed to sign the appropriate paperwork to have his name placed on the birth certificate, and possibly the child’s name named in his last name?
[[Image here]]
“... [T]he testimony [was] that the father was not allowed to be there during the child’s birth, or he attempted to be there and was not allowed to be there. The child [i]s not yet four years old. He’s relatively young. The Court does not see this as a detrimental effect on him in any way by changing his name at such a young age. It’s certainly something that he can become accustomed to, given his relatively infant age at the time that the name change has been ordered to take place.
[[Image here]]
“So the Court finds that it does not do any harm or detriment to the child in that it’s not against the child’s best interest to order that the child’s name be changed to that of his father whom he will, pursuant to the Court’s Order, hopefully, develop a close and nurturing relationship with, and would be identified with as the father rather than not.”

Discussion

On appeal, the mother argues that the trial court erred in changing the child’s surname. Section 26-17-636(e), Ala.Code 1975, a part of the Alabama Uniform Parentage Act (“the AUPA”), § 26-17-101 et seq., Aa.Code 1975, provides that, upon adjudicating paternity, “[o]n request of a party and for good cause shown, the court may order that the namq of the child be changed.” The mother argues that the father did not present good cause to warrant changing the name of the child.
In its judgment, the trial court stated that it decided to change the surname of the child, in part, because the mother had denied the father an opportunity to be present at the birth of the child so that he could have been listed on the child’s birth certificate and possibly could have named the child. We note, however, that, even if the father had been present at the birth of the child, the father did not have any right to be listed on the birth certificate. Section 22-9A-7(f), Aa.Code 1975, provides, in pertinent part:
“(2) If the mother was not married at the time of either conception or birth or between conception and birth, the name of the father shall not be entered on the certificate unless paternity has been determined by a court of competent jurisdiction or unless the legitimation process specified in Sections 26-11-1 through 26-11-3, [Aa.Code 1975,] inclusive, or otherwise provided by law has been completed.
“(3) If the father is not named on the certificate of birth, no other information *1104 about the father shall be entered on the certificate.”
Because the mother was not married to the father at or before the time she gave birth, to the child, the Alabama Office of Vital Statistics would not have been permitted to set forth any information about the father on the child’s birth certificate based merely on his attendance at the child’s birth.
Furthermore, the trial court was mistaken as to the possibility that the father could have named the child at the time of birth. Alabama generally follows the common law of England. See Ala. Code 1975, § 1-3-1. Under the common law, a child born of an unmarried woman customarily would bear her surname, see Buckley v. State, 19 Ala.App. 508, 98 So. 362 (1923), and a putative father had no right to name a child born out of wedlock,see Barabas v. Rogers, 868 S.W.2d 283, 285-87 (Tenn.Ct.App.1993). No Alabama statute alters the common-law rule by granting a putative father the right to name a child.[2] Hence, in this case, the mother did not deprive the father of any “right” to name the child by objecting to his being present at the birth of the child. Given the mother’s testimony that she would not have allowed the child to be given the surname of the father, the father could not have named the child, as the trial court apparently believed.
In 1833, our legislature gave a putative father the right to rename a child by legitimating the child in accordance with statutory procedure. See John G. Aiken, Digest of the Laws of the State of Alabama, 77-78 (Bastardy § 9) (2d ed. 1836) (“[I]f, at the time of filing any [declaration of legitimation], the person filing the same shall desire to change the name of any child ... he shall set forth the fact, together with the name to which he desires the change to be made; whereupon the name shall be changed accordingly, and the latter name shall be the lawful name of any such child or children.”). In 1984, the legislature adopted the 1973 version of the Uniform Parentage Act, which provided, in pertinent part:
“(c) If the order of the court [adjudicating paternity] is at variance with the child’s birth certificate, the court shall order that a new birth certificate be issued pursuant to the provisions of Section 26-17-19[, Ala.Code 1975].”
Ala.Code 1975, former § 26-17-14. That statute authorized Alabama courts to change the surname of a child born out of wedlock to reflect the surname of the declared or adjudicated father. However, in 1981 the legislature had amended the legitimation statute to reflect that a declared father did not have the right to name the child, but only had the right to petition the probate court to prove that a name change would be in the best interests of the child. See Ala. Acts 1981, Act No. 81-800, p. 1407, § 2, codified at Ala.Code 1975, § 26-11-3. In 2008, the legislature adopted the current version of the Uniform Parentage Act, i.e., the AUPA, which, as stated above, now permits a court adjudicating paternity to change the name of a child only upon petition of a party and “for good cause shown.” Ala.Code 1975, § 26-17-636(e).
*1105 Alabama courts have generally defined “good cause” as “ ‘a reasonable cause, one that is material and substantial as applied to a particular set of facts.’” Heatherly v. Carter, 485 So.2d 769, 771 (Ala.Civ.App.1986) (quoting Department of Indus. Relations v. Mann, 35 Ala.App. 505, 509, 50 So.2d 780, 783 (1950)). Our courts have not defined “good cause” as it specifically relates to § 26-17-636(e), but our legislature has recognized in § 26-11-3, i.e., the legitimation statute, that the name of a child may be changed only, if it is in the best interests of the child. See also Roe v. Conn, 417 F.Supp. 769, 782-83 (M.D.Ala.1976) (declaring the former Alabama legitimation statute unconstitutional for failing to provide for a determination of whether a name change would serve best interests of the child). Construing § 26-11-3 and § 26-17-636 in pari materia, see Ex parte Johnson, 474 So.2d 715, 717 (Ala. 1985) (“It is a fundamental principle of statutory construction that statutes covering the same or similar subject matter should be construed in pari materia.”), under Alabama law a court adjudicating paternity may change the name of the child only if it is in the best interests of the child.
Furthermore, § 26-17-901, Ala.Code 1975, a part of the AUPA, provides: “In applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.” Only nine states have adopted the 2000 version of the Uniform Parentage Act upon which the AUPA is based. See 9B Uniform Laws Annotated, Uniform Parentage Act (2000), Table of Jurisdictions Wherein Act Has Been Adopted (2013 Cumulative Annual Pocket Part). Of those states, Texas is the only state that has construed the “good cause” language found in § 26-17-636(e). Based on its survey of other Texas law on the same subject, a Texas appeals court determined that a court may change the name of a child if it is in the best interests of the child. In re M.C.F., 121 S.W.3d 891 (Tex. App.2003); see also In re S.M.V., 287 S.W.3d 435 (Tex.App.2009). That holding coincides with the general rule prevailing in this country that, in disputes between unmarried parents as to the surname of the child, the court should resolve the dispute based on the best interests of the child. See In re Marriage of Schiffman, 28 Cal.3d 640, 169 Cal-Rptr. 918, 620 P.2d 579 (1980); Jay M. Zitter, Rights and Remedies of Parents Inter Se With Respect to the Names of Their Children, 40 A.L.R.5th 697 (1996). Our holding places Alabama law in line with the law in those other jurisdictions and promotes the uniformity of interpretation of the AUPA our legislature has encouraged.
The mother argues that the father did not present sufficient evidence to support the name change. Because the trial court heard oral testimony in this matter, the ore tenus standard of review is applicable. “Under the ore tenus standard of review, we must accept as true the facts found by the trial court if there is substantial evidence to support the trial court’s findings.” Beasley v. Mellon Fin. Servs. Corp., 569 So.2d 389, 393 (Ala.1990).
Our review of the record indicates that the father offered no reason as to why he wanted the child’s surname changed. He merely testified that he did not think that the name change would upset the child. The trial court agreed with the father that, due to his young age, the child likely would not suffer any particular detriment from the name change. However, as we read § 26-17-636(e), a parent petitioning to change the name of the child must present evidence showing that the change would benefit the child in some positive manner. See Barabas, 868 S.W.2d at 287 (“The courts should not change a *1106 child’s surname unless the change promotes the child’s best interests.”). A court may not change the name of a child on the ground that the change would not cause the child any particular detriment. That standard would essentially place the burden on the nonmoving parent to prove that the requested name change would harm the child instead of placing the burden on the petitioning parent to prove that the name change will benefit the child, as § 26-17-636(e) contemplates. See Bam-bas, 868 S.W.2d at 287 (“Since Mr. Bara-bas was the party seeking to change his son’s surname, he had the burden of proving that the change would be in the child’s best interest.”).
The father did not present the trial court with any evidence indicating that the name change would promote the best interests of the child. The trial court hypothesized that, without the name change, the child might not identify with the father, but that conclusion is not based on any evidence relating to this particular child. See Ex parte Devine, 398 So.2d 686 (Ala.1981) (holding that, when deciding what is in the best interests of a child, a court must make an individualized determination based on the particular circumstances of the case without relying on generalized notions regarding families). The record contains no evidence regarding the child’s understanding of his relationship to the father. The father also did not present any evidence indicating that the use of the mother’s surname has engendered some confusion in the child about his relationship to the father.
On the other hand, the mother testified that the child already knows his name as her surname, that all of his records identify him by that name, that he would be confused about his identity if his name was now changed, and that the child has always lived with her. Pursuant to the trial court’s judgment, because of the distance between the parties’ assignments the child will not exercise visitation with the father every other weekend but, instead, will see the father on holidays and during school breaks. At all other times, the child will be living with the mother, who has been the sole custodian of the child during his entire life. The trial court received no evidence indicating that the mother would discontinue using her surname; therefore, the child will be identified by the same surname as his primary caretaker and physical custodian as he has been throughout his life. Although the factor is not dispositive, we cannot overlook the fact that the father waited over three years to establish his paternity, all the while knowing that the child was not bearing his surname and that the child would become accustomed to his given name.
Based on the foregoing, we conclude that the record does not contain substantial evidence demonstrating that good cause existed to change the child’s surname. See, e.g., In re M.C.F., 121 S.W.3d at 897-98 (reversing a judgment changing a child’s name where the father merely made a bare request for the name change and had failed to present evidence showing good cause for the change and where the mother had presented evidence indicating why the change would not be in the child’s best interests). Therefore, we reverse the judgment of the trial court and remand this cause for the entry of a judgment denying the father’s request to change the child’s surname.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ„ concur.

. The mother’s appeal was held in abeyance until the disposition of the postjudgment motions, át which time it became effective. See Rule 4(a)(5), Ala. R.App. P.

. Rule 420-7-l-.04(l), Ala. Admin. Code (Bd. of Health/Dep’t of Pub. Health), provides: "The parent(s) may give a child any name they wish for registration of birth. The surname of the child does not have to be the surname of either parent.” By use of the parenthesis, the drafters of the rule recognized that a child may have only one legal parent at the time of birth. That rule is therefore consistent with the English common-law custom allowing an unmarried mother to give a child born out of wedlock her surname.