# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND160

| | |
|---|---|
| James F. Klundt, | Plaintiff and Appellee |
| v. | |
| Rebecca L. Benjamin, | Defendant and Appellant |

No. 20180419

Appeal from the District Court of Bottineau County, Northeast Judicial District, the Honorable Michael P. Hurly, Judge.

AFFIRMED IN PART AND REVERSED IN PART.

Opinion of the Court by Jensen, Justice.

Erin M. Conroy, Bottineau, ND, for plaintiff and appellee.

Caitlyn A. Pierson, Minot, ND, for defendant and appellant.

**Jensen, Justice.**

[¶1]    Rebecca Benjamin appeals from a district court's judgment awarding primary residential responsibility of the minor child P.J.K. to James Klundt and changing the child's last name to Klundt.  We affirm the judgment as to primary residential responsibility and reverse the court's judgment regarding its *sua sponte* change of the minor child's last name.

I.

[¶2]    Benjamin and Klundt are the biological parents of P.J.K., who was born in 2012.  Benjamin was initially the primary caregiver for P.J.K.  Benjamin eventually relocated from North Dakota to Tennessee and then Michigan.  In 2016, Benjamin moved back to North Dakota and an informal fifty-fifty custody arrangement was agreed upon by both parties.  These arrangements were all informal and followed by the parties without a judicial order.

[¶3]    In 2017, Benjamin notified Klundt she intended to move with her fiancé to South Africa for roughly two years and planned to take P.J.K. with her.  Klundt objected to the move and petitioned the district court for primary residential responsibility of P.J.K.  The parties reached an interim agreement allowing Benjamin to move to South Africa with Klundt receiving summer parenting time.  The interim agreement also provided that an evidentiary hearing would be held in 2018 regarding primary residential responsibility for P.J.K.  Benjamin resided in South Africa for roughly three months before moving back to Michigan to reside with her parents.

[¶4]    In July 2018, an evidentiary hearing was held regarding primary residential responsibility.  Benjamin wanted to be allowed to move with P.J.K. to Michigan.  Because Benjamin's relocation request had not been properly noticed or briefed, the request to relocate was not considered by the district court.  During the hearing, each party presented evidence and exhibits suggesting they should be awarded primary

residential responsibility of P.J.K. Near the end of the hearing, the district court *sua sponte* announced the minor child's last name would be changed from Benjamin to Klundt.

[¶5] In August 2018, the district court entered its findings of fact, conclusions of law, and order awarding Klundt primary residential responsibility of P.J.K. A judgment reflecting the order was entered the same day. On appeal, Benjamin argues the court erred in awarding primary residential responsibility of P.J.K. to Klundt and by *sua sponte* changing the last name of the minor child.

II.

[¶6] Benjamin argues the district court erred in its analysis of the best interest factors and by awarding primary residential responsibility to Klundt. "A district court's award of primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous." *Morris v. Moller*, 2012 ND 74, ¶ 5, 815 N.W.2d 266. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Id.* (quoting *Doll v. Doll*, 2011 ND 24, ¶ 6, 794 N.W.2d 425). In reviewing a district court decision, this Court "will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result." *Marsden v. Koop*, 2010 ND 196, ¶ 8, 789 N.W.2d 531 (quoting *Heinle v. Heinle*, 2010 ND 5, ¶ 6, 777 N.W.2d 590). "This is particularly relevant for custody decisions involving two fit parents." *Id.*

[¶7] "District courts must award primary residential responsibility of children to the party who will best promote the children's best interests and welfare." *Morris*, 2012 ND 74, ¶ 6, 815 N.W.2d 266. "A district court has broad discretion in awarding primary residential responsibility, but the court must consider all of the relevant factors under N.D.C.C. § 14-09-06.2(1)." *Id.* The district court found factors (d) and (e) favored Klundt, and the rest of the factors were inapplicable or favored neither

2

party. Benjamin argues the court's analysis of best interest factors (a), (b), (d), (e), (f), and (g), its decision to separate siblings, and its final conclusion as to residential responsibility, were clearly erroneous.

[¶8] Benjamin argues the district court erred in finding factor (a) favored neither party. Factor (a) requires the district court to consider "the love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance." N.D.C.C. § 14-09-06.2(1)(a). In its factual findings, the court stated, "It is very evident both [Klundt] and [Benjamin] love their son P.J.K. They both have a strong degree of love, affection, and emotional ties to him."

[¶9] Benjamin asserts because she has spent more time caring for P.J.K., factor (a) should favor her. Benjamin cites *Datz v. Dosch* as authority supporting her position the district court erred in finding factor (a) to favor neither party. 2013 ND 148, 836 N.W.2d 598. In *Datz,* the district court found that one party relying on a nanny to care for children an excessive amount of time was relevant to factor (a). *Id.* at ¶ 13. However, our holding in *Datz* does not support a generalized rule that an individual who spends more time caring for a child should be favored with respect to factor (a).

[¶10] The record reveals both parents care greatly about P.J.K. While Klundt admitted not being present in P.J.K.'s initial years due to personal issues, he eventually requested and received an informal fifty-fifty custody arrangement. Testimony indicates Klundt also helped out with P.J.K. during Benjamin's parenting time. Klundt described different activities he and P.J.K. enjoy doing together and appears to care about P.J.K. a great deal. The district court's finding that factor (a) favored neither party was not induced by an erroneous view of the law, there is evidence in the record to support the finding, and this Court is not left with a definite and firm conviction a mistake has been made.

[¶11] Benjamin argues Klundt's history of drinking and driving, especially with their son, requires factor (b) to be weighed in her favor. Factor (b) requires the district court to consider "[t]he ability of each parent to assure that the child receives adequate

3

food, clothing, shelter, medical care, and a safe environment." N.D.C.C. § 14-09-06.2(1)(b). The court discussed this factor at great length and found factor (b) to favor neither party.

[¶12] The district court acknowledged Klundt's history with alcohol throughout its order. The court noted its concern with Klundt's prior decision to drink and drive with P.J.K. in the vehicle. However, the court also expressed concern with Benjamin's lack of initial concern with this matter. Benjamin failed to notify the police or request supervised visitation though she was aware of the incident. The court ultimately found there were no current safety issues with the home environment provided by Klundt and found a similar incident was "unlikely to occur in the future."

[¶13] The district court believed Klundt had once driven while intoxicated with P.J.K. in the vehicle and found Benjamin's other accusations to lack credibility. This Court "will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result." *Marsden*, 2010 ND 196, ¶ 8, 789 N.W.2d 531. While Klundt's prior actions are concerning, the court explained its reasoning behind its conclusion that a similar incident was unlikely to occur again. The court also highlighted its concern that Benjamin only made Klundt's prior drinking and driving with P.J.K. an issue when residential responsibility became contested. The court's finding that factor (b) favored neither party was not induced by an erroneous view of the law, there is evidence in the record to support the finding, and this Court is not left with a definite and firm conviction a mistake has been made.

[¶14] Benjamin argues the district court erred in finding factor (d) favored Klundt. Factor (d) requires the court to consider the "sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community." N.D.C.C. § 14-09-06.2(1)(d). With respect to factor (d), the district court made several findings. The court found Benjamin to have moved the child multiple times, once to a different country, and was concerned about

4

Benjamin's penchant for uprooting P.J.K. The court also found Benjamin had a history of using P.J.K. as a pawn during disagreements and was willing to expose the minor child to conflict. Benjamin asserts the court ignored evidence which should have resulted in factor (d) favoring her. She claims Klundt has lived a similarly nomadic lifestyle, and the court did not consider her close-knit family.

[¶15] The record indicates while Klundt has moved, he has always remained in North Dakota, close to his family. In contrast, Benjamin has moved much greater distances and does not have a history of staying in one area for an extended period of time. Benjamin also ignores the district court's finding she had a history of using P.J.K. as a pawn during disagreements and was willing to expose the minor child to conflict. The trial evidence included text messages and pictures sent to Klundt and Klundt's mother evidencing Benjamin's willingness to involve P.J.K. in conflict or threaten to negatively affect Klundt's relationship with P.J.K., if she does not get her way. Benjamin essentially asks this Court to reweigh the evidence under factor (d) and find it favors her. This Court "will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result." *Marsden*, 2010 ND 196, ¶ 8, 789 N.W.2d 531. The district court's finding that factor (d) favored Klundt was not induced by an erroneous view of the law, there is evidence in the record to support the finding, and this Court is not left with a definite and firm conviction a mistake has been made.

[¶16] Benjamin argues the district court erred in finding factor (e) favored Klundt. Factor (e) requires the district court to consider, "[t]he willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." N.D.C.C. § 14-09-06.2(1)(e). With respect to factor (e), the district court made several findings and concluded this factor strongly favored Klundt. The court found the parties were supposed to have shared residential responsibility upon Benjamin's return from South Africa. However, after coming back to the United States earlier than anticipated, Benjamin resided in Michigan and declined to allow Klundt to fly the child to North Dakota. The court also found

Benjamin treated P.J.K. as solely hers and threatened to harm P.J.K.'s relationship with Klundt if she did not get her way during arguments.

[¶17]  Benjamin's argument points out evidence that would tend to benefit her and ignores evidence relied upon by the district court.  The trial evidence includes text messages supporting Benjamin's attitude that P.J.K. is solely hers and documenting her threats to harm Klundt's relationship with P.J.K.  It is also undisputed that instead of returning to North Dakota to engage in shared residential responsibility after returning early from South Africa, Benjamin decided to relocate to Michigan without permission from the district court.  While the court's interim order may have been ambiguous as to what should happen if Benjamin returned early from South Africa, the order clearly states the parties were to have shared interim residential responsibility while providing permission for Benjamin to take the child to South Africa for an extended period of time.  When Benjamin returned early, she interpreted the order as giving herself unilateral control over P.J.K. until the evidentiary hearing, rather than allowing Klundt to transport the child to North Dakota for parenting time. The district court's finding that factor (e) favored Klundt was not induced by an erroneous view of the law, there is evidence in the record to support the finding, and this Court is not left with a definite and firm conviction a mistake has been made.

[¶18]  Benjamin argues the district court erred in finding factor (f) favored neither party.  Factor (f) requires the court to consider the moral fitness of the parents and how that fitness impacts the child. N.D.C.C. § 14-09-06.2(1)(f).  In finding this factor favored neither party, the court stated, "[b]oth parties blamed each other for alcohol and drug abuse."  There was testimony from Klundt that Benjamin had abused heroin and pain killers in the past.  Benjamin accused Klundt of prior issues with alcohol. The court acknowledged some of Benjamin's allegations were true, but found Klundt had overcome his prior issues.  Though the court did not specifically discuss Klundt overcoming his issues under factor (f), a court need not make separate findings of fact for each factor and a court's findings regarding one factor may be applicable to another factor. *Dieterle v. Dieterle*, 2013 ND 71, ¶ 7, 830 N.W.2d 571.  The court

6

clearly did not believe either party's moral fitness would affect P.J.K. going forward. The court's finding that factor (f) favored neither party was not induced by an erroneous view of the law, there is evidence in the record to support the finding, and this Court is not left with a definite and firm conviction a mistake has been made.

[¶19] Benjamin argues the district court erred in finding factor (g) favored neither party. Factor (g) requires the district court to consider "[t]he mental and physical health of the parents, as that health impacts the child." The court did not consider this factor and stated, "No significant evidence was provided to this Court with respect to this factor." "[T]he relevant inquiry under factor (g) is not merely whether a parent has mental or physical health problems, but whether those health problems might adversely affect the parent's ability to care for the [child]." *Lindberg v. Lindberg*, 2009 ND 136, ¶ 17, 770 N.W.2d 252.

[¶20] Benjamin argues Klundt's prior alcohol-related problems require a finding that factor (g) favors her. Benjamin also suggests Klundt's past struggle with post-traumatic stress should weigh in her favor. The district court considered Klundt's prior struggles and found Klundt had changed his lifestyle and did not believe there would be issues going forward. The court's finding that factor (g) favored neither party was not induced by an erroneous view of the law, there is evidence in the record to support the finding, and this Court is not left with a definite and firm conviction a mistake has been made.

### III.

[¶21] Benjamin argues the district court erred by separating P.J.K. from his half-siblings. P.J.K. has one adult sibling (Dane), one teenage sibling (A.N.), and at the time of the evidentiary hearing, a younger sibling on the way. Klundt is not the father of any of the siblings.

[¶22] Parenting arrangements that separate siblings are disfavored. *Marsden,* 2010 ND 196, ¶ 29, 789 N.W.2d 531. However, this Court has affirmed a district court's separation of siblings, often half-siblings, on multiple occasions. *Id.* at ¶ 30; *Dronen v. Dronen*, 2009 ND 70, ¶ 20, 764 N.W.2d 675. *BeauLac v. BeauLac*, 2002 ND 126,

¶¶ 16-18, 649 N.W.2d 210; *Ryan v. Flemming*, 533 N.W.2d 920, 924-25 (N.D. 1995).

When deciding whether to split custody, the district court should consider:

> the interrelationship of the children, the children's ages, the similarity of interests, and activities of the children, whether the child previously resided with the custodial parent, the parents' involvement in the child's upbringing, the parents' emotional stability, the parents' previous lack of cooperation regarding visitation, the child's preference, parental agreement providing for siblings to be together frequently, and the location of the parents' residences.

*Marsden,* at ¶ 29 (quoting *Dronen*, at ¶ 20). "An award of custody is a finding of fact, and this Court will not disturb a custody award unless it is clearly erroneous." *Stoppler v. Stoppler*, 2001 ND 148, ¶ 7, 633 N.W.2d 142.

[¶23] The district court discussed the separation of siblings issue separate from the best interest factors. While a court may discuss the separation of siblings as part of the best interest factors, it is not considered a best interest factor itself. It is therefore appropriate to discuss the separation of siblings as part of, or separate from, the best interest factors, as long as the district court adequately explains its decision.

[¶24] The district court reasoned that because Dane was now moving out and attending college, because A.N. and P.J.K. were not close, and because he had no relationship with his unborn sibling, the separation would not be detrimental. The court incorrectly noted A.N. did not travel to South Africa with Benjamin and P.J.K. The court went on to discuss Benjamin's history of splitting up the children for extended periods of time and found it would not be detrimental to P.J.K. if he was separated from his two half-siblings.

[¶25] While the district court erred in stating A.N. did not travel to South Africa, it was not the only fact relied upon by the court in its decision to separate siblings. The record indicates Benjamin did have a history of leaving A.N. with a relative while she would spend the night with her boyfriend. P.J.K. was brought on these visits and separated from his sibling. Further, while A.N. did go to South Africa, Dane did not accompany his mother and siblings during their three months abroad. The district court's ultimate determination that separation would not be detrimental to P.J.K. was

8

not induced by an erroneous view of the law, there is evidence in the record to support the finding, and this Court is not left with a definite and firm conviction a mistake has been made.

[¶26] There is evidence in the record supporting the district court's best interest findings, and this Court is not left with a definite and firm conviction a mistake has been made. Also, this Court does not find the separation of P.J.K. from his half-siblings to be clearly erroneous. Therefore, the court did not err in awarding primary residential responsibility of P.J.K. to Klundt.

IV.

[¶27] Benjamin argues the district court erred in *sua sponte* changing the minor child's last name to Klundt. A court's decision on a petition for a change of name is reviewed for an abuse of discretion. *Walbert v. Walbert*, 1997 ND 164, ¶ 11, 567 N.W.2d 829. A court abuses its discretion if it "acts in an arbitrary, unconscionable, or unreasonable manner, if its decision is not the product of a rational mental process leading to a reasonable determination, or if it misinterprets or misapplies the law." *Anderson v. Baker*, 2015 ND 269, ¶ 7, 871 N.W.2d 830. While the court's ultimate decision of a petition for a change of name is reviewed for an abuse of discretion, in situations where the name change is for a minor child, the court's analysis must incorporate the best interest of the child. *In re Berger*, 2010 ND 28, ¶ 8, 778 N.W.2d 579. These are findings of fact and overturned only if found to be clearly erroneous. *Id.* "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court is left with a definite and firm conviction a mistake has been made." *Id.*

[¶28] Here, there was no petition or motion to change the minor child's name and a *sua sponte* name change appears to be a matter of first impression for this Court. The existing caselaw indicates name changes generally come before the district court through the request of a party. *Matter of L.Z.N.*, 2017 ND 137, ¶ 2, 895 N.W.2d 747; *Berger*, 2010 ND 28, ¶ 8, 778 N.W.2d 579; *Walbert*, 1997 ND 164, ¶ 11, 567 N.W.2d 829. Further, a court may be required to give notice and an opportunity to respond,

9

even when acting *sua sponte*. *Rath v. Rath*, 2014 ND 171, ¶ 15, 852 N.W.2d 377 (reversing district court's *sua sponte* amendment to divorce judgment on due process and notice grounds); *State v. Erickson*, 2011 ND 49, ¶ 16, 795 N.W.2d 375.

[¶29] Benjamin was not given notice or an opportunity to respond to the name change issue. Consideration of a name change is not a situation we have previously recognized as one in which a district court may have a duty to act *sua sponte*, such as a right to appeal or subject matter jurisdiction issue. *Trottier v. Bird*, 2001 ND 177, ¶ 5, 635 N.W.2d 157 (subject matter jurisdiction may be considered *sua sponte*); *Hurt v. Freeland*, 1997 ND 194, ¶ 4, 569 N.W.2d 266 (right to appeal may be considered *sua sponte*). The district court's *sua sponte* action was not done to protect an important right. Instead, it unnecessarily created a dispute where none had existed. The court's *sua sponte* decision to change the minor child's last name to Klundt without notice to Benjamin and allowing her an opportunity to respond was arbitrary and unreasonable, and therefore an abuse of discretion.

V.

[¶30] The district court's findings on the best interest factors, as well as its decision to award primary residential responsibility to Klundt, were not clearly erroneous, and we affirm the judgment regarding primary residential responsibility. The court's *sua sponte* decision to change the minor child's last name was an abuse of discretion, and we reverse the judgment inasmuch as it changes the child's last name to Klundt.

[¶31] Jon J. Jensen
Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte
Gerald W. VandeWalle, C.J.