FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
MAY 9, 2023
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2023 ND 85

E.R.J.,
                                                        Plaintiff and Appellee

  v.

T.L.B.,
                                                        Defendant and Appellant

### No. 20220199

Appeal from the District Court of Divide County, Northwest Judicial District, the Honorable Benjamen J. Johnson, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Carrie L. Francis, Minot, N.D., for plaintiff and appellee; submitted on brief.

Thomas J. Corcoran, Williston, N.D., for defendant and appellant; submitted on brief.

**Tufte, Justice.**

[¶1] T.L.B. appeals from a district court judgment changing the surname of her child from T.L.B.'s surname to a hyphenated surname under N.D.C.C. § 14-20-57(7). The child's hyphenated name combines her father's and mother's surnames. On appeal, T.L.B. argues the district court: (1) erroneously found she changed her surname after her marriage; (2) erred because it hyphenated H.R.B's name on the erroneous basis that she shared a name with no one else in her household; (3) erred because it did not consider the factors for changing a name under N.D.C.C. § 32-28-02(3); (4) erred because it did not consider T.L.B.'s emotional injury as an injury for purposes of N.D.C.C. § 32-28-02(3); (5) erred in hyphenating H.R.B.'s surname because it had insufficient best interests of the child evidence; and (6) erred in hyphenating H.R.B.'s surname because the suggestion to hyphenate the child's surname was raised for the first time at the evidentiary proceeding. We affirm.

I

[¶2] T.L.B. and E.R.J., the child's father, were never married. E.R.J. initiated this action by petitioning the court to alter the child's surname. H.R.B. was one year old at the time the district court issued its judgment. T.L.B. gave H.R.B. her surname when she provided personal information for H.R.B.'s birth certificate, and E.R.J. indicated the child's name was H.R.B. on his signed acknowledgment of paternity. T.L.B. recently married, and the parties contest whether she changed her name upon her marriage.

II

[¶3] A district court's decision regarding whether a name change under the Uniform Parentage Act is in a minor's best interest is subject to clearly erroneous review. *Edwardson v. Lauer*, 2004 ND 218, ¶ 4, 689 N.W.2d 407. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court is left with a

definite and firm conviction a mistake has been made. *In re Berger ex rel. K.C.F.*, 2010 ND 28, ¶ 8, 778 N.W.2d 579.

[¶4]   The statute at issue in *Edwardson* was N.D.C.C. § 14-17-14(3) [Uniform Parentage Act (1973) § 15], which has since been repealed. *Edwardson*, 2004 ND 218, ¶ 4. Section 14-17-14(3), N.D.C.C., impliedly granted trial courts the power to change a child's surname if it was in a child's best interest. *Id*.; *In re C.J.C.*, 2000 ND 27, ¶ 5, 606 N.W.2d 117. Under the implied authority in N.D.C.C. § 14-17-14(3), we concluded a surname change required examination of the best interests of the child, "which is a factual process best suited for clearly erroneous review." *Edwardson*, at ¶ 5. We conclude clearly erroneous review continues to apply to a name change under the express authority granted by N.D.C.C. § 14-20-57(7) [Uniform Parentage Act (2002) § 636]. *Klundt v. Benjamin*, 2019 ND 160, ¶ 27, 930 N.W.2d 116; *In re Berger*, 2010 ND 28, ¶ 8 (reviewing name change of a minor under N.D.C.C. ch. 32-28 under clearly erroneous standard instead of abuse of discretion standard applicable to adult name changes).

## III

[¶5]   T.L.B. argues the district court erred in finding that she changed her surname upon her recent marriage. T.L.B. testified that she had not changed her name, nor did she intend to do so. She testified, however, that she had entered a hyphenated name on her marriage license, which was a combination of her maiden name and her new husband's surname.

[¶6]   A "person's surname does not automatically change upon marriage," but parties to a marriage may change their name after solemnization "by entering the new surname in the space provided on the marriage license application." N.D.C.C. § 14-03-20.1(2)-(3). T.L.B. testified that she entered a hyphenated name on her marriage license. This evidence supports the district court's finding, and the finding is not clearly erroneous.

[¶7]   T.L.B. also argues the district court erred in finding that no one in T.L.B.'s household shares a surname with H.R.B and this error requires this Court to reverse the order. Because there was no clear error in finding T.L.B.

had changed her name upon marriage, there is no clear error in the finding that H.R.B. does not share a surname with anyone in T.L.B.'s household.

IV

A

[¶8] T.L.B. argues the district court erred because it changed H.R.B.'s name solely under section 14-20-57(7), N.D.C.C., and did not also consider section 32-28-02(3), N.D.C.C. T.L.B. cited no authority requiring application of both statutes when changing a minor's name. She argues the court was required to apply both statutes because it is possible to harmonize them under N.D.C.C. § 1-02-07. We disagree. "The interpretation and application of a statute is a question of law, which is fully reviewable on appeal." *State ex rel. N. Dakota Hous. Fin. Agency v. Center Mut. Ins. Co.*, 2006 ND 175, ¶ 9, 720 N.W.2d 425.

[¶9] These two sections differ in the findings of fact they require a district court to make before it has authority to change a minor's surname. Section 32-28-02(3), N.D.C.C., is the general statute for when individuals want to change their name or a child's name. *See also Berger*, 2010 ND 28, ¶¶ 6-7. A court must order a change of name under N.D.C.C. § 32-28-02(3) when the petitioner establishes, among other things, "proper and reasonable cause" to change a name. Section 14-20-57(7), N.D.C.C., applies when a party to a matter adjudicating parentage of a child requests a change of the child's surname "for good cause shown." N.D.C.C. § 14-20-57(7). This case concerns a parentage order; therefore, N.D.C.C. § 14-20-57(7) applies. Neither statute references the other. Both statutes set forth findings upon which the court has authority to order a name change. The statutes provide independent alternative procedures to grant a name change. The district court did not err when it applied only the requirements of N.D.C.C. § 14-20-57(7) without considering additional findings required in N.D.C.C. § 32-28-02(3).

B

[¶10] T.L.B. argues the district court erred by not considering emotional injury—the sort of injury that precludes a finding of "proper and reasonable cause" under N.D.C.C. § 32-28-02(3)—that she would allegedly suffer if the

3

court changed her child's name. Because we interpret section 14-20-57 and section 32-28-02 as providing alternative name change authority rather than overlapping requirements, we conclude the court did not err in declining to apply the requirements of section 32-28-02(3) to this request under section 14-20-57(7).

V

A

[¶11] T.L.B. argues the district court erred because it relied on insufficient evidence to support a finding that hyphenating H.R.B.'s surname would be in the child's best interests. "On request of a party and for good cause shown, the court may order that the name of the child be changed." N.D.C.C. § 14-20-57(7) [Uniform Parentage Act § 636(e)]. The act does not define the term "good cause." N.D.C.C. § 14-20-02. In other contexts, this Court has defined good cause as "a legally sufficient reason." *Interest of Guardianship of G.V.*, 2023 ND 19, ¶ 19, 985 N.W.2d 655 (quotations and citations omitted). However, this Court has not defined "good cause" in the context of N.D.C.C. § 14-20-57(7). We interpret this uniform act guided by a statutory directive to make our law uniform with other states which enact it. N.D.C.C. § 14-20-66; N.D.C.C. § 1-02-13.

[¶12] Texas has adopted Uniform Parentage Act § 636(e). Tex. Fam. Code § 160.636 [Uniform Parentage Act (2002) § 636]. There is a split within the Texas appellate courts on the interpretation of this section of the Uniform Parentage Act. *Interest of G.L.H.*, 630 S.W.3d 309, 313-14 (Tex. App. 2021); *see also In re H.S.B.*, 401 S.W.3d 77, 81 n.2 (Tex. App. 2011). One group of appellate courts concluded that "the best interests of the child" and "good cause" are "distinct concepts" and a petitioner must establish both to change a child's surname. *G.L.H.*, at 313-14. The other group of appellate courts concluded that "the good cause requirement in Section 160.636(e) is subsumed in the best-interest analysis because the best interest of a child will 'necessarily be considered [a] good cause for changing the child's name.'" *Id.* at 314 (citing *Anderson v. Dainard*, 478 S.W.3d 147, 151 n.1 (Tex. App. 2015)). This latter group weighed the best interest factors only when determining whether there

4

was "good cause." *Id*. In the interest of promoting a uniform interpretation, we consider these cases in detail to explain our interpretation of "good cause" under the Uniform Parentage Act.

B

[¶13] The Court of Appeals of Texas, Fort Worth, determined that "good cause" and "best interests of the child" were separate concepts. *In re M.C.F.*, 121 S.W.3d 891, 894-95 (Tex. App. 2003) (separately analyzing "good cause" and "best interest"). The court first defined "good cause" as a legally sufficient reason. *M.C.F.*, 121 S.W.3d at 896 (citing *Black's Law Dictionary* 213 (7th ed. 1999)). "Good cause is often the burden placed upon a litigant ... to show why a request should be granted or an action excused." *Id*. The court then looked to definitions of "good cause" in other legal contexts from Texas law and law from other states. *Id*. at 896-97. The court concluded the "good cause" standard was not met because there was a "complete absence of evidence." *Id*. at 897.

[¶14] The Court of Appeals of Texas, Dallas, concluded that a petitioner had the burden to separately establish both standards. *In re S.M.V.*, 287 S.W.3d 435, 447-48 (Tex. App. 2009). Finding no case law defining good cause, the court turned to *Black's Law Dictionary* and interpreted it to require a "legally sufficient reason." *Id*. at 448. The court concluded there was a legally sufficient reason based on the trial court's finding that after the surname change, the child shared a surname with the child's joint managing conservator and named biological parent. *Id*. at 448. In addition, good cause was supported by evidence that the name change "clarifie[d] S.M.V.'s identity and avoid[ed] potential future confusion that might be caused by S.M.V. possibly having a name different from either biological parent." *Id*.

C

[¶15] The Court of Appeals of Texas, Houston, considered the "good cause" standard to be subsumed in the "best interest" analysis. *In re H.S.B.*, 401 S.W.3d at 81 n.2 (citing *S.M.V.*, 287 S.W.3d at 447). The court explained that it would "evaluate the sufficiency of the evidence for the best interest finding and presume that the trial court found good cause on the same ground" because the

best interests of a child were good cause for changing a child's name. *Id.* In other words, under the statute a petitioner has the burden to show there is good cause to change a child's name, and a finding that the child's best interests favored a name change would satisfy this good cause standard. *See also Anderson*, 478 S.W.3d at 151 n.1 (citing *H.S.B.*, 401 S.W.3d at 81 n.2).

[¶16] Alabama's court of civil appeals also interpreted the "good cause" provision under Ala. Code § 26-17-636(e) [Uniform Parentage Act (2002) § 636]. *J.M.V. v. J.K.H.* 149 So. 3d 1100, 1104-05 (Ala. Civ. App. 2014). The court found no Alabama case law defining good cause under Ala. Code § 26-17-636(e), so it turned to Texas case law to promote uniformity. *J.M.V.,* at 1105 (citing *In re M.C.F.*, 121 S.W.3d 891; *In re S.M.V.*, 287 S.W.3d 435). On the basis of these authorities, the court concluded that a petitioner bears the burden to present evidence demonstrating that a name change promotes the best interests of a child. *Id*. at 1105-06 (describing "the general rule prevailing in this country that, in disputes between unmarried parents as to the surname of the child, the court should resolve the dispute based on the best interests of the child"). In effect, the court decided that a child's best interests are "good cause" or a legally sufficient reason to change the child's name. Under Ala. Code § 26-17-636(e), the court reasoned petitioners had the burden to provide evidence that a name change would benefit the child and reversed because the petitioner offered no reason or evidence why the name change would benefit the child. *J.M.V.,* at 1105-06; s*ee also K.G. v. M.E.*, 2021 WL 5751848, 3-4 (Ala. Civ. App. 2021) (citing *J.M.V.,* at 1105) ("[A] parent petitioning to change the name of the child must present evidence showing that the change would benefit the child in some positive manner." The court concluded the petitioner failed to meet his burden because he did not bring evidence establishing that a surname change would promote the child's interests.).

D

[¶17] We are persuaded that a district court's findings that changing a child's name is in the best interests of a child satisfies the good cause standard under N.D.C.C. § 14-20-57(7). This Court has described its method of statutory interpretation:

6

We look at the language of the statute and give words their plain, ordinary, and commonly understood meaning, unless a contrary intention plainly appears or the words are specifically defined. When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. This Court construes statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted.

*State v. Davison*, 2017 ND 188, ¶ 8, 900 N.W.2d 66 (cleaned up). Although "good cause" and "best interests of a child" are distinct concepts, *M.C.F.*, 121 S.W.3d at 894-95, we agree that under the Uniform Parentage Act, a finding that a name change is in the best interests of the child satisfies the required showing of good cause under the Act.

[¶18] Under the Act, "good cause" is simply "a legally sufficient reason." *Black's Law Dictionary* 274 (11th ed. 2019). "Good cause is often the burden placed on a litigant (usu. by court rule or order) to show why a request should be granted or an action excused." *Id*. A synthesis of the other states' cases informs us that to demonstrate good cause under the Uniform Act, a petitioner has the burden to provide the court with evidence that changing a child's name would provide some benefit to the child. *See S.M.V.*, 287 S.W.3d at 448-49; *H.S.B.*, 401 S.W.3d at 81 n.2; *J.M.V.*, 149 So. 3d at 1105-06. There is good cause to change a child's name if a district court finds, without error, that changing a child's name is in the best interests of the child. *See J.M.V.*, 149 So. 3d at 1105.

E

[¶19] The district court analyzed the best interests of the child factors from N.D.C.C. § 14-09-06.2 to the extent they are applicable to a child's name change. The court made findings under factors a, d, e, and h. We agree that few of these statutory best interest factors in N.D.C.C. § 14-09-06.2 have relevance to a name change, and note that these factors by their own terms relate only to parental rights. N.D.C.C. § 14-09-06.2(1) (describing best interest factors "[f]or the purpose of parental rights and responsibilities …."). Under the Uniform Parentage Act, the Texas Court of Appeals identified several

7

nonexclusive best interest factors relevant to a name change of a minor that district courts should consider. *G.L.H.*, 630 S.W.3d at 314-15; *H.S.B.*, 401 S.W.3d at 84; *S.M.V.*, 287 S.W.3d at 449–50. These nonexclusive factors include:

> (1) the name that would best avoid anxiety, embarrassment, inconvenience, confusion, or disruption for the child, which may include consideration of parental misconduct and the degree of community respect (or disrespect) associated with the name;
> (2) the name that would best help the child's associational identity within a family unit, which may include whether a change in name would positively or negatively affect the bond between the child and either parent or the parents' families;
> (3) assurances by the parent whose surname the child will bear that the parent will not change his or her surname at a later time;
> (4) the length of time the child has used one surname and the level of identity the child has with the surname;
> (5) the child's preference, along with the age and maturity of the child; and
> (6) whether either parent is motivated by concerns other than the child's best interest—for example, an attempt to alienate the child from the other parent.

*Interest of C.M.V.*, 479 S.W.3d 352, 359 (Tex. App. 2015). We have previously affirmed a child's name change where the district court assessed the child's best interests in terms of the effect on the parental relationships, concerns about name differences, the age of the child and the impact on school enrollment and other potential benefits and challenges in the future. *Edwardson v. Lauer*, 2004 ND 218, ¶¶ 7-8, 689 N.W.2d 407. This is a fact specific inquiry and each child's best interests may require consideration of a different combination of factors. Because a child's best interests with respect to a name change will differ from the child's best interests with respect to residential responsibility, we encourage parties to present evidence of the nonexclusive factors listed above rather than the statutory factors largely inapplicable to this distinct inquiry.

[¶20] When considering the love, affection, and emotional ties between H.R.B. and her parents, the district court found that hyphenating H.R.B.'s surname

8

was in her best interest because it would facilitate her relationship and emotional ties with her father and her paternal extended family. The court found that both parents have an appropriate relationship with H.R.B.

[¶21] In weighing the stability of the parents' home environment and the impact of extended family, the district court found that because T.L.B. has legally assumed her husband's surname, H.R.B. no longer shares a surname with any of the members of T.L.B.'s household. The district court reasoned that "it may become confusing to H.R.B. why she does not share the same legal surname with her mother or half-brother." In addition, the court found that hyphenating H.L.B.'s surname would increase the familial bond with the paternal side of her family.

[¶22] In its findings regarding the willingness of each parent to facilitate H.R.B.'s relationship with the other parent, the district court expressed concerns about T.L.B.'s willingness to facilitate E.R.J.'s paternal relationship with H.L.B. The court expressed no concern about E.R.J.'s willingness to facilitate H.R.B.'s and T.L.B.'s relationship.

[¶23] Regarding H.R.B's home, school, and community records, the court found that changing H.L.B.'s name would not adversely affect her but would facilitate her paternal relationship because she would share her father's surname. *Berger*, 2010 ND 28, ¶ 13. The "primary factor" relied on by the court was avoiding scrutiny from H.R.B.'s peer group and community that may result from having a different surname from everyone else in her household. The court also found the surname change would not adversely affect any of H.R.B.'s peer relationships because H.R.B. is still very young and has not developed significant school relationships or understanding of her name's meaning. *Id*.

[¶24] The factors considered by the district court were relevant and appropriate to determine H.R.B.'s best interests regarding the proposed name change. The court's findings are supported by the record, and its choice between permissible views of the evidence is not clearly erroneous.

[¶25] T.L.B. argues the court erred in hyphenating H.R.B.'s surname because the suggestion to give the child a hyphenated surname was raised for the first time *sua sponte* by the court at the evidentiary proceeding. T.L.B. also asserts that there was no testimony or evidence to support why a hyphenated name would be in the child's best interest. If the court finds good cause, the court "may order that the name of the child be changed." N.D.C.C. § 14-20-57(7). The word "may" in a statute operates to confer discretion. *Interest of J.J.G.*, 2022 ND 236, ¶ 9, 982 N.W.2d 851. "A court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner, if its decision is not the product of a rational mental process leading to a reasonable determination, or if it misinterprets or misapplies the law." *Klundt*, 2019 ND 160, ¶ 27.

> While the court's ultimate decision of a petition for a change of name is reviewed for an abuse of discretion, in situations where the name change is for a minor child, the court's analysis must incorporate the best interest of the child. These are findings of fact and overturned only if found to be clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court is left with a definite and firm conviction a mistake has been made.

*Id.* (cleaned up). In *Klundt v. Benjamin*, neither party petitioned the court to change the child's name, and the district court acted *sua sponte*. This Court reversed for abuse of discretion because the non-moving party did not have notice or an opportunity to respond to the name change. *Id.* at ¶¶ 27-28.

[¶26] Here, the first time either party suggested hyphenating H.R.B.'s surname was at the hearing on the petition. Unlike *Klundt*, E.R.J. petitioned the district court to change H.R.B.'s surname to his surname. At the hearing, the court asked E.R.J. whether he had any alternative preferences for his child's surname other than his own surname. E.R.J. stated that if the court did not give the child his surname, his preferred alternative would be a hyphenated surname. T.L.B. cites no authority suggesting that a district court errs under these circumstances by ordering a hyphenated surname combining the two names requested by the parties. *Klundt* does not apply to the current

case, because both parties were on notice and had an opportunity to respond to the name change petition. *Klundt*, 2019 ND 160, ¶ 29. Hyphenating the child's surname was within the scope of E.R.J.'s petition and was at the "request of a party" under N.D.C.C. § 14-20-57(7) because E.R.J. requested it as an alternative. The court did not abuse its discretion in ordering the name change.

## VII

[¶27] We affirm the judgment of the district court.

[¶28] Jon J. Jensen, C.J.
     Lisa Fair McEvers
     Jerod E. Tufte

**Crothers, Justice concurring in the result.**

[¶29] The statute controlling disposition of this case provides, "On request of a party and for good cause shown, the court may order that the name of the child be changed." N.D.C.C. § 14-20-57(7). Chapter 14-20, N.D.C.C., is part of the Uniform Parentage Act adopted by North Dakota in 2005. 2005 N.D. Sess. Laws ch. 135, § 9. That legislative act repealed North Dakota's prior version of the Uniform Parentage Act contained in N.D.C.C. ch. 14-17. *See* majority opinion, ¶ 4.

[¶30] Child name changes were permitted under the prior version of the Uniform Parentage Act. This Court explained:

> Under North Dakota's enactment of the Uniform Parentage Act, N.D.C.C. ch. 14-17, district courts are implicitly granted the authority to change a minor child's surname, assuming such a change is in the minor's best interest. *Interest of C.J.C.*, 2000 ND 27, ¶ 5, 606 N.W.2d 117. The specific statutory authority for this conclusion comes from N.D.C.C. § 14-17-14(3), which provides, "the judgment or order of the district court in an action brought under the Uniform Parentage Act may contain any other provision . . . concerning . . . any other matter in the best interest of the child."

11

*Edwardson v. Lauer,* 2004 ND 218, ¶ 3, 689 N.W.2d 407.

[¶31] The prior Act, N.D.C.C. § 14-17-14(3), required a best interest analysis. In *Edwardson*, 2004 ND 218, at ¶ 8, this Court addressed the best interests but did not specifically list or identify factors to consider. Rather, we affirmed a child's name change after the district court assessed the child's best interests in terms of the effect on the parental relationships, concerns about name differences, the age of the child and the impact on school enrollment, and other potential future benefits and challenges.

[¶32] The current Act does not expressly require a best interest analysis, and places a burden on the movant to prove "good cause." This Court has defined "good cause" in a number of contexts, including unemployment law, *Esselman v. Job Service ND,* 548 N.W.2d 400, 402 (N.D. 1996), workers compensation law, *Inwards v. North Dakota Workforce Safety & Ins.,* 2014 ND 163, ¶ 22, 851 N.W.2d 693, termination of dealership contracts, *Williston Farm Equipment, Inc. v. Steiger Tractor, Inc.,* 504 N.W.2d 545 n.3 (N.D. 1993), and child guardianship cases, *Interest of Guardianship of G.V.,* 2023 ND 19, ¶ 19, 985 N.W.2d 655; *Interest of Guardianship of J.O.,* 2021 ND 76, ¶ 16, 958 N.W.2d 149 (defining "good cause" as "a legally sufficient reason") (citing good cause, *Black's Law Dictionary* 274 (11th ed. 2019)).

[¶33] North Dakota law directs that "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." N.D.C.C. § 1-02-02. We also are directed to interpret uniform acts uniformly. N.D.C.C. § 14-20-66 ("In applying and construing this chapter, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.").

[¶34] When interpreting the phrase "good cause," I question whether deep review of the split in Texas court of appeals' decisions and two Alabama court of appeals' decisions furthers either of these goals, other than to confirm some of the foreign state holdings equate "good cause" to "best interest" and others do not. *See* majority opinion, ¶¶ 12-16.

[¶35] Our guardianship cases provide a serviceable definition of "good cause" that is consistent with the purpose of the statute at issue in this case. *See Interest of Guardianship of G.V.,* 2023 ND 19, ¶ 19; *Interest of Guardianship of J.O.,* 2021 ND 76, ¶ 16. That definition of "good cause" also is consistent with at least some of the Texas courts defining the phrase during their construction of words used in the Uniform Parentage Act. Indeed, the majority ultimately comes to this conclusion by adopting the *Black's Law Dictionary* definition we used in our guardianship cases, and holding, "Under the Act, 'good cause' is simply 'a legally sufficient reason.'" Majority opinion, ¶ 18.

[¶36] I agree that "good cause" means "a legally sufficient reason." I also agree with the majority that "legally sufficient reason" in the context of a name change under N.D.C.C. § 14-20-57(7) should be measured by the child's best interest. Majority opinion, ¶ 18. *See also Edwardson*, 2004 ND 18, ¶ 3 (considering minor's best interests under the prior Act, N.D.C.C. § 14-17-14(3)). However, I respectfully cannot join the majority opinion's reference to best interest factors from three sources, the analysis under one of the sources, and a bare conclusion the district court did not err in finding the child's best interests were served by a name change. Instead, this Court should more clearly provide district courts and litigants with direction about the best interest test or factors to be used for a name change under N.D.C.C. § 14-20-57(7).

[¶37] By providing clear, non-exclusive factors, we will do more than "encourage" parties to present evidence of the nonexclusive factors. Majority opinion, ¶ 19. Rather than encourage, I would state with clarity that the residential responsibility best interest factors from N.D.C.C. § 14-09-06.2 cannot be a court's primary yardstick in a N.D.C.C. § 14-20-57 proceeding. Those factors are unsuitable because they are limited by express terms: "For the purpose of parental rights and responsibilities, the best interests and welfare of the child is determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child." N.D.C.C. § 14-09-06.2(1). The factors also are unsuitable as a primary test because very few of them have relevance to a name change under the Uniform Parentage

Act. The statutory residential responsibility factors therefore provide little assistance in resolving a question whether a child's name should be changed.

[¶38] Instead of suggesting that primary reliance on the N.D.C.C. § 14-09-06.2 factors can work under some circumstances, I would expressly adopt the Texas factors provided in the majority opinion at paragraph 19. Because those factors are non-exclusive, child best interest factors from our residential responsibility law can be used, but only when one or more of them directly pertains to the facts presented in a pending matter.

[¶39] Here, the district court relied exclusively on N.D.C.C. § 14-09-06.2 and made findings under factors a, d, e, and h. At paragraph 24, the majority concludes without explanation that the district court's application of these factors to the evidence was sufficient under our standard of review. In the posture this case was presented, I concur with the conclusion because the evidence and the district court's findings of fact are sufficient to show "good cause" as required under N.D.C.C. § 14-20-57. As a result, remand for the district court to make express findings under the non-exclusive Texas best interest factors would be fruitless.

[¶40]  Daniel J. Crothers
          Douglas A. Bahr